Weldon, J.,
delivered the opinion of the court:
This claim is founded on two contracts made with the defendants in the year 1881 for “mail-messenger service” and “ mail-station service ” in the city of New York on mail routes Nos. 6771 and 6772. The consideration to be paid for the mail-messenger service on route No. 6771 was $63,200 per annum, and the service was to commence on the 1st of July, 1881, and extend for a period of four years. The consideration to be paid for mail-station service on route No. 6772 was $19,704 per annum, and the service was for a like period of time. The petition avers the performance of the entire service according to *70 the requirements of the contracts, and alleges a failure on tbe part of the defendants to pay the sum of $5,591.20, and for that amount this suit is prosecuted. The findings show that the said amount was deducted by the Sixth Auditor from the compensation of the claimant “on the order or request of the Postm aster-General” * * * “ as fines imposed for alleged delinquencies” on the part of the claimant in the prosecution of the service of said contract.
The only question submitted for our consideration and decision is, had the Postmaster-General the right, under the contract and law, to impose fines and forfeitures in diminution of the claimant’s compensation to the extent as shown by the facts of this record. In the contract on route No. 6772 it is provided:
“That for a failure to deliver the mail into the post-office or to any station mentioned in this contract; for suffering other business or engagements, or any other cause whatever, not beyond the control of the contractor, to delay or interfere with the prompt delivery of the mail at the post-office or station, or for carrying the mail in a manner different or inferior to that hereinbefore specified; for suffering the mail to become wet, injured, lost, or destroyed; for all or any of which they shall forfeit a sum, in the discretion of the Postmaster-General, according to the nature and frequency of the delinquency.”
In contract on route No. 6771 it is provided:
“And it is also further stipulated and agreed that for a failure to deliver the mail to a departing train in time to go by said train, or for not delivering the mail at the post-office immediately upon its arrival; for suffering other business or engagements, or any other cause whatever not beyond the control of the contractor, to delay or interfere with the prompt delivery of the mail at the post-office, depots, and wharfs, or for carrying the mail in a manner different or inferior.to that hereinbefore specified; for failure to provide a guard for the mail, as hereinbefore mentioned, when the same is conveyed at night; for suffering the mail to be wet, injured, lost, or destroyed ; for all or any of which they shall forfeit a sum, in the discretion of the Postm as ter-General, according to the nature and frequency of the delinquency.”
During the continuance of said contracts and upon the adjustment of the claims of said claimant the Postmaster-General, in pursuance to his alleged right, assessed asjfines against the said claimant the sum of $11,597; and, upon being satisfied that some of the fines had been improperly imposed, remitted the *71 sum of $6,106.49, leaving a balance of $5,591.20, as shown by the fourth finding. It is insisted by the claimant that the said amount was improperly assessed or imposed by the Postmaster-General, and that therefore he should recover that amount. It is shown by the findings that the Department, in pursuance to the power claimed under the contract and law, imposed penalties and fines for many different classifications of delinquencies, as follows: “ For failure to have wagon meet supplementary mails; ” for “ transfering mail in open wagons without screens; ” for “ delays; ” for “ special complaints; ” for. “ miscellaneous irregularities;” for “carelessness and drunkenness of drivers; ” for “failure to furnish advance wagon; ” “ trips in open wagon; ” “ late arrivals; ” “ missions of special service; ” “ various failures.”
The fines were imposed after the close of the quarter or month in which the service was rendered upon reports furnished the Postmaster-General from time to time, by persons having personal knowledge of the manner in which the service was performed. It will be seen from the general specifications that in many instances it is impossible to determine the exact delinquency of the contractor. For a failure to furnish advance wagons the sum of $1,958 seems to have been imposed. An advance wagon is defined by the findings to be a “ wagon in which the letter mail might be transferred from the depot to the post-office in advance of the paper and other mail matter, and also in advance of the schedule time for arrivals and departures, and also a wagon sent in advance of schedule time to carry papers from the post-office to the postal-car.” The law in force at the time the contracts were made and during their existence provides as follows:
“ Sec. 3962. The Postmaster-General may make deductions from the pay of contractors for failures to perform service according to contract, and impose fines upon them for other delinquencies. He may deduct the price of the trip in all cases where the trip is not performed; and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier.”
By virtue of this provision of law the Postmaster-General is empowered to impose fines for “ delinquencies ” in the performance of the service, and under that power it is insisted that the fines were properly imposed in this case. The whole amount assessed under both contracts was $11,597.62, which *72 was afterwards remitted to the amount in controversy, to wit, $5,591.13.
The statute makes the Postmaster-General the judge when a fine shall be imposed, and unless that power is exercised incompatibly with the reasonable and legitimate use of the power, parties contracting with the Government are bound by his action. The service to be performed is of such a character that a provision of that kind is essential to the successful performance of the most important function incident to the executive branch of the Government. If the Post-Office Department were subjected to the ordinary remedy for a violated contract, the measure of protection would be incommensurate to the wrong inflicted, and the mail service might thereby be impaired in th at efficiency required by public policy, When the contracts were made they became subject to the provisions of the statute defining the powers of the Postmaster-General; and that power became a part of the contracts, with the same force as if specially provided for by the terms of the agreement.
In a case involving the question of the right of a public officer uuder a contract, the Supreme Court has said:
“ Be this supposition as it may, it is sufficient that theparties have agreed that distance should be ascertained and fixed by the chief quartermaster, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, as a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant and Government.” (Kihlberg v. The United States, 97 U. S. R.., 398.)
The law having selected the Postmaster-General as the arbiter between the Government and contractor to determine the question of delinquency, his action in the premises, if objected to, must be impeached by showing such a state of facts as constitute in law a failure on the part of the officer to discharge the duty imposed on him in substantial requirement, with his duty in the premises. The findings show that for each month .during the performance of the service, the Postmaster-General imposed finesfor delinquencies, andofthosefines more than •one-half has been remitted by him upon subsequent investigation and proof. That fact would seem to indicate an honest effort upon the part of the officer to preserve the rights of the parties and so administer his trust as that no wrong' should be done to either side by the exercise of his power. In the *73 remission of the $6,106.49 it is impossible to tell what items of the aggregate fines were embraced in that amount.
Under the heads of “ omissions of special service,” “ special complaints,” and “ miscellaneous irregularities,” less than $1,000 were imposed; and if it should be held that such assessment were void for uncertainty, it not being shown that such fines have not been remitted, that conclusion of law would not avail the claimant in this proceeding. The law presumes that public officers perform their duty; and in the absence of evidence tending to rebut that presumption, courts must give their acts the force of valid transactions. (United States v. Crusell, 14 Wall. R., 1; Philadelphia R. R. Co.v. Stimson, 14 Pet., 448.) Upon the question of advance wagons, the amount assessed for a failure to furnish such' wagons is in the same condition of uncertainty as the amounts assessed under the general classifications of delinquencies; it does not appear that the amount assessed for such failure was not included in the remission.
It does not follow that because the delinquencies upon which the fines were assessed were not specified in the contract, that therefore such failures were no violations of the contracts, as we have already held that the agreements must be enforced in the spirit of the law regulating the power of the Postmaster-General in existence at the time the agreements were made. The aggregate compensation for the service under both contracts was $82,904, which has been paid the claimant except the sum of $5,591.13.
This deduction may be a hardship to the claimant, but he dealt with the defendants in the light of that law which conferred upon a public officer almost absolute power, and in the absence of a showing that such officer acted in bad faith, or beyond the legitimate domain of his rights, we must recognize his action as binding upon the interests of the claimant. If this court were to so construe the law that these defendants could only recover fór a violation of contracts according to-the usual mode of assessing damages, the postal service might be stripped of that efficiency required by public necessity.
Congress have seen fit to clothe the Department with a plenary power; and in the absence of proof that such power has been mistaken or abused courts must enforce the law to protect the rights secured by its provisions, it is the judgment of the court that the petition be dismissed.