BALTIMORE REFRIGERATING & HEATING CO. OF BALTIMORE CITY.
v. WETZEL et al.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1908.)

No. 777.

1. CONTRACTS—WRITTEN CONTRACT—ALTERATION BY PAROL.

A written contract cannot be changed after its execution by a parol agreement, unless in exceptional cases and upon a valuable consideration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1123.]

2. SALES—ACTION FOR PRICE—EVIDENCE—RELEVANCY—PAROL EVIDENCE TO VARY CONTRACT.

In an action to recover the price of machinery sold under a written contract, evidence offered by defendant to show that the machinery failed to comply with a warranty contained in a prior contract between the parties, which had been fully executed, on the claim that such warranty had been incorporated in the second contract by parol agreement made after its execution, held properly excluded as irrelevant to the issues.

In Error to the Circuit Court of the United States for the District of Maryland.

Robert H. Smith and George Whitelock (David Fowler, on brief), for plaintiff in error.

W. Calvin Chestnut and Charles Markell, Jr. (Gans & Haman, on brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and PURNELL and DAYTON, District Judges.

PURNELL, District Judge. Suit was instituted by plaintiffs below, trading as the Wetzel Mechanical Stoker Company, against the Baltimore Refrigerating & Heating Company, a corporation, to recover the sum of $5,591.50, with interest, being the contract price for eight mechanical stokers sold and erected by the plaintiffs for the defendant under a written contract. The declaration contains the common counts, and a special count setting up the written contract in August, 1906, to erect the stokers, and alleging that the stokers had been erected and installed in accordance with the contract, and that the defendant had failed and refused to make any payments. The defendant pleaded the

general issue, and also a special plea, alleging that the stokers in question are an infringement of a patent. This last defense was abandoned at the trial, and no evidence offered to support it.

The plaintiffs below (defendants in error here) reside at Trenton, N. J., and are engaged in the business of manufacturing and erecting a certain mechanical stoker for feeding coal into furnaces. The stoker manufactured by them, known as the "Wetzel mechanical stoker," is a patented device. The plaintiff in error was familiar with the Wetzel mechanical stoker, and had in use four of these stokers (or two double stokers, as they were formerly described), erected under a contract of November 2, 1905. The contract for the erection of the eight stokers is contained in the written contract, dated August 4, 1906, by which the Wetzel Mechanical Stoker Company agreed to erect and install the eight stokers for $5,864, payable in the installments therein provided, together with a contemporaneous paper, dated August 9, 1906, signed by the Wetzel Mechanical Stoker Company subsequently to the signing of the contract dated August 4th, but prior to the execution of the contract by the refrigerating company. The formal written agreement, dated August 4th (but not actually executed by the refrigerating company until August 9th), and a letter of August 9th, constitute the contract.

In the course of the trial two defenses were suggested: (1) An effort was made by the defendant to establish by parol evidence certain warranties which are not contained in the written contract under which the eight stokers were erected, but were contained in the contract of November 2, 1905, under which the previous Wetzel mechanical stokers had been erected and were claimed by the defendant to have been incorporated in the present contract by oral agreement subsequent to the written contract. (2) The defendant offered evidence to show that the eight stokers in question did not comply with the provision of the written contract that "the metal is distributed in such a way that the air space will range from forty per cent. to seventy per cent. (40% to 70%), and will give sufficient supply of air, at the same time not permitting the sifting of any unconsumed coal or carbon to the ash pit. It was asserted by a number of witnesses for the defendant that coal did sift through to the ash pit, to a great loss of the defendant. At the conclusion of the case, with all of this testimony before them, the jury found a verdict for the plaintiff for the full amount claimed, with interest.

There were 17 assignments of error presented for review of certain rulings of the court on questions of evidence, and the action of the court in granting the plaintiffs' three prayers, and their motion to strike out testimony, and refusing the defendant's first prayer, and the defendant's motion to exclude testimony. A number of these assignments of error involve the same legal questions, which this court must of necessity eliminate. The jury returned a verdict in favor of plaintiffs below, defendants in error here, for the contract price, and upon such verdict the court entered judgment for the contract price, $5,591.50. The contract was an entire contract. Though the price was to be paid in installments, the whole price was to be paid for the work to be done,

i. e., installing the stokers. There was no other consideration for the contract.

Although it is contended in the brief of plaintiff in error that a written agreement may be changed after its execution by a parol agreement, as a general proposition of law this is against the weight of authority. It certainly cannot be done, except in exceptional cases upon valuable consideration, and the parties to the contract seemed to recognize this basic principle of law. There was no consideration for this alleged agreement to incorporate in the contract the guaranties of the former contract of 1905, and according to Fentress' own testimony Wetzel promised to reduce this postconstructed agreement to writing, which was never done. It was, therefore, no part of the contract of 1906, and could not be so considered in connection therewith. It had nothing to do with the case. The contract of 1906 was a complete, entire contract. There was no reference in it to the former contract as a part thereof. This former contract had been completed, and the stokers installed, used, and paid for. This was a separate and distinct transaction from the contract of 1906.

The second, third, and seventh assignments of error relate to the refusal of the trial judge to admit testimony or evidence of the 1905 contract and other evidence and testimony offered concerning the warranties in said contract. In this there was no error. This covers several of the assignments of error, which it is not deemed necessary to notice in detail. The same question is attempted to be raised by the eleventh assignment of error, and by plaintiffs' motion to strike out testimony, which is the subject of the seventeenth assignment of error, all of which assignments of error are overruled, and the rulings of the trial judge thereon affirmed, for the reasons hereinbefore stated.

The eighth exception is as follows:

"'Q. What was the condition of the boilers under which he put the last stokers? A. Those boilers were new. I have been in cold storage and operating machinery for the past ten years. I am familiar with the operation of machinery like that at the Baltimore Refrigerating & Heating Company. My knowledge was acquired by practical experience, and I understand it absolutely.' Thereupon counsel for the defendant asked the witness the following question: 'Q. Will you tell us whether or not your experience in machinery and so on will enable you to or enables you to state whether or not these stokers produced the results which you say these guaranties call for?' But counsel for the plaintiffs objected to the said question being put, or to any answer being given thereto by the witness, and the court sustained the objection, to which ruling of the court the defendant by its counsel prayed leave to except, and that the court would sign and seal this its second bill of exceptions, which is accordingly done this 17th day of June, 1907."

The guaranties referred to were not in the contract sued on, as has been said, and all testimony in reference thereto was incompetent, impertinent, and improper; hence this was properly ruled out. This assignment of error is therefore overruled, and the ruling of the court affirmed.

What is called the sixth bill of exceptions, after several pages of correspondence, telegrams, etc., concludes as follows, and it is presumed this constitutes the gist of the exception:

" 'Q. (Mr. Whitelock). Don't give the conversation with Mr. Fentress. You had an interview with Mr. Fentress, had you? A. Yes; of course, as chief engineer I would have to consult with the head of the concern, and that is what I am trying to say, that I consulted with the superior. Q. What was the result of that? A. I told Mr. Fentress—' But counsel for plaintiffs objected to witness being permitted to answer the question by testifying to any conversation between himself and Mr. Fentress, and the court sustained the objection, to which defendant, through its counsel, excepted in due form, which exception was allowed by the court."

It is difficult to arrive at a satisfactory reason for this exception, to the ruling out of a conversation between Hearn, an employé, and Fentress, vice president, of plaintiff in error corporation, and no sufficient reason is given why it was admissible. All this testimony referred to matters in relation to the guaranties, which, as we have seen, were not incorporated into the contract of 1906; hence all testimony relating thereto was incompetent and was properly excluded. This exception is overruled, and the ruling of the Circuit Court thereon affirmed.

The ninth bill of exceptions, referring to and making the previous bills of exception a part of this bill of exception, then proceeds:

"The witness Geo. W. Wright testified as follows: 'There is, of course, the labor lost, due to rehandling or sifting coal, which according to the fire room pay roll would amount to about the expense of two men per twenty-four hours, two men to the watch, and that would be directly chargeable, I think, to the operation of the stokers. About $1.75 for each man per day would be say $500 for four months, and it would run at that rate for the whole period, provided we were running that many boilers. The stokers have not been running without repair.' Thereupon the counsel for the defendant proposed to prove by the witness the extent and cost of the repairs to the said stokers, of which the witness testified that a separate account had been kept: but counsel for the plaintiffs objected to the evidence, and the court sustained the objection, to which ruling the defendant excepted."

This testimony was properly excluded. It was no part of the contract, related to no issue properly arising on the pleadings, and the ruling of the court is affirmed.

The exceptions to the granting of plaintiffs' prayers 1, 2, and 3 and defendant's first and second motions to exclude testimony present in a different form exceptions already overruled, which may be said with equal force of defendant's prayers 1 and 2 for instruction, made the basis of exceptions, all of which exceptions are overruled, and the ruling of the court thereon affirmed.

Affirmed.