*1147 OPINION.
Smith:
The petitioner contends that the $150,000 par value of second preferred stock of the Indiana Coke & Gas Co., which, together with the 1,872 shares of common stock, it sold in March, 1917, for $150,000, was acquired as consideration for the cancellation of $100,000 of the indebtedness of the Monon Coal Co. and that there was a profit of only $50,000 realized upon the sale.
The respondent contends that the petitioner acquired both the common stock and the second preferred stock of the Indiana Coke & Gas Co. in exchange for stock of the Monon Coal Co., which it carried upon its books at a cost of $1, and therefore realized a profit of $149,999 upon its sale in 1917.
It is admitted that the written agreement of March 15, 1915, does not provide for the cancellation of any part of the indebtedness of the Monon Coal Co. to the petitioner as consideration for the stock in question, but the petitioner contends that there was a preliminary oral agreement between its president and Ogle, parties to the written agreement, that the 1,500 shares of second preferred stock of the Indiana Coke & Gas Co. should be applied to the indebtedness of the Monon Coal Co., and that the written agreement having failed so to provide was properly modified by the subsequent agreement to conform to the actual intent of the parties.
While the courts generally are reluctant to sanction the alteration of written instruments by parol agreements (see Baltimore Refrigerating & Heating Co. v. Wetzel, 162 Fed. 117), we believe that the rule is not strictly applicable in the instant case. The parties here are not in fact seeking to alter or modify the written agreement for any purpose of avoidance. The dispute arose after the contract had been fully performed and involved a question not definitely ascertainable from the contract itself. Under such circumstances it was entirely proper to inquire into the intent of the parties in regard to the acts already performed in pursuance of the contract, for the purpose of establishing their respective rights growing out of such acts.
*1148 The cardinal rule for the interpretation of all contracts is to discover the intent and meaning of the parties from the language in the contract, if possible. Canal Co. v. Hill, 15 Wall. 94; Great Northern Ry. Co. v. United States, 236 Fed. 433. The contract here specifies, part 9, paragraph 2, that there should be delivered to the petitioner $150,000 par value of second preferred stock, but does not specify any consideration for such stock. The contract further provides, part 11, that for the $440,000 indebtedness of the Monon Coal Co. the petitioner should receive $200,000 par value of 6 per cent preferred stock of the Monon Coal Co., of an issue to be limited to such amount, and for the balance of such indebtedness should receive $240,000 face value of second mortgage bonds of the coal company of an issue to be limited to $1,000,000, secured by a second mortgage on all the property of the coal company.
For some reason not explained the petitioner never received the $200,000 par value of the 6 per cent preferred stock of the Monon Coal Co. It did receive the common stock of the Indiana Coke & Gas Co. in exchange for its stock in the Monon Coal Co. in the ratio stated in the contract of three shares of the former for four of the latter; and also received the 1,500 shares of second preferred stock of the Indiana Coke & Gas Co. It is obvious that either the written contract did not carry out the intent of the parties or that the parties agreed to a modification of the written contract before its complete performance.
Whether we say that the subsequent agreement reached by the arbitration proceedings, that $100,000 of the $150,000 received from the sale of the stock should apply to the Monon Coal Co. indebtedness, modified the written contract of March 15, 1915, or repudiated a part of the old contract and substituted a new provision, the result in either case is to fix the actual cost to the petitioner of the 1,500 shares of second preferred stock at $100,000.
The courts have long favored arbitration as being an expeditious and inexpensive means of settling private disputes and will make all fair presumptions in order to sustain the award. Hartford Fire Insurance Co. v. Bonner Mercantile Co., 44 Fed. 151. In the absence of bad faith, of which there is no indication here, the award of the arbitrator should be accepted as clearly settling the questions submitted. The award fixes the cost of the stock sold in 1911 for $150,000 at $100,000. The petitioner, therefore, realized a profit of $50,000 upon the sale.
Judgment will he entered on 15 days’ notice, under Rule 50.