# JACKSONVILLE, PENSACOLA AND MOBILE RAILROAD COMPANY v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

Argued October 21, 1886.—Decided November 1, 1886.

A railroad company, in aid of whose road Congress grants land upon condition that it shall transport mails at such price as Congress may direct, and that until the price be thus fixed the Postmaster-General shall have power to determine the same, is (in the absence of contracts with the department for special service with unusual facilities, or for determined periods) bound to transport mails (until Congress directs the rates) at such reasonable compensation as the Postmaster-General may from time to time prescribe; and the continuance by such company to transport mails after the expiration of the term of a written contract neither implies that it is, after the Postmaster-General has otherwise directed, to be paid the same rates for transportation which it was paid under the written contract, nor that the contract is renewed for any specific term for which contracts of the Post-office Department may usually be made.

This was an appeal from the Court of Claims. The case is stated in the opinion of the court.

*Mr. S. F. Phillips* and *Mr. A. J. Willard* [*Mr. S. M. Lake* was with them on the brief], for appellant.

*Mr. Assistant Attorney-General Watson*, for appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

The petitioner, the Jacksonville, Pensacola and Mobile Railroad Company, was incorporated under the laws of Florida, and aided in the construction of its road by a grant of land from the United States. The act making the grant contained a clause providing that the mails of the United States should be transported over the road and its branches under the direction of the Postmaster-General, at such price as Congress might, by law, direct; and that, until the price should be thus fixed, the Postmaster-General should have power to determine the same. 11 Stat. 16, ch. 31, § 5. This provision was a condition attending the grant, with which the company could not refuse to comply without subjecting itself to a claim for damages on the part of the government, and possibly to a forfeiture of the grant. As was said in the case of the *Chicago & Northwestern Railroad Co.* v. *The United States*, 104 U. S. 680, the power thus vested in the Postmaster-General to establish the price includes the power to prescribe the period of its duration. He might, if he thought expedient, and in many cases it would be so, prescribe specially for the service of each day. There may be, under some circumstances, temporary difficulties of transportation which would call for frequent, and, perhaps, daily changes in the prices allowed. When, however, a price is agreed upon for a prescribed service for a designated period, and there are collateral stipulations annexed to the same which could not be exacted by the government without the assent of the company, as, for instance, the giving of sureties for the performance of the service in a particular way, then, as held in the case cited, a contract is created which cannot be disregarded by the government without a breach of

good faith. But where no such collateral stipulations are made, and no duration of time is prescribed, but the service is exacted simply from the obligation growing out of the acceptance of the condition of the land-grant, it rests in the discretion of the Postmaster-General to change the price, from time to time, as in his judgment the public interests may require. It is not to be presumed that in such matters he will act in an arbitrary or unreasonable manner. For any abuse of his authority there is the security, which exists with reference to the action of all heads of the executive departments, in their responsibility to their superior, and liability to be called to account by Congress. No abuse of authority, however, is suggested in the present case. An error of construction as to the rights of the petitioner is alone alleged.

It appears from the record that the petitioner had a written contract with the government for the transportation of the mail between certain designated points, from July 1, 1871, to June 30, 1875, at prescribed rates; that the contract contained various stipulations on the part of the company as to the manner in which the service should be performed, the free transportation of special agents of the department, its liability to fine for neglects and omissions of duty, and for the giving of adequate security for the performance of its undertaking. The price for the service was prescribed, and no question is made as to the entire and satisfactory fulfilment of the contract by the company, or of the payment of the compensation stipulated by the government. After the termination of this contract the petitioner continued to carry the mail as previously, without any notice from the Postmaster-General that the price to be allowed for the service would be in any respect different, until the 21st March, 1876, when he fixed the rate of compensation at a less sum for the service until June 30, 1876. The service was performed by the company notwithstanding the reduction made, and the reduced price was received without objection.

From the 1st of July, 1876, until June 30, 1880, the same service was performed by the company; but further reductions from the compensation previously allowed were made under

the acts of Congress of July 12, 1876, and of June 17, 1878. Notice of them was given to the company, but the service by it was continued, and the reduced price was received, also, without objection. It is now claimed that the company is entitled to the difference between the price thus allowed and the price paid previous to July 1, 1876. It is to recover such difference that the petition is filed, the contention being that, by the continuation of the service of the company after June 30, 1876, without objection from the Postmaster-General, a contract was implied that the same compensation should be subsequently allowed.

At this time, also, by regulation of the department, the United States were divided into four contract sections. A general letting for one of these sections was to take place every year, and contracts were to be then made for four consecutive years, commencing on the 1st of July. The road of the petitioner was within the section in which contracts were to end on June 30, 1875, until the regulation was altered, when it came within the section in which contracts were to end on June 30, 1876. From this latter fact, that the road was thus within the section in which contracts were to be made for four years from July 1, 1876, it is further contended that the contract implied from the service afterwards rendered, as mentioned above, was to continue for four years.

The answer to both positions is obvious. By the condition contained in the land-grant, the company, as already stated, was to transport the mail at such price as the Postmaster-General should determine, unless fixed by a law of Congress. No implication could, therefore, arise from the continuance of the service other than that the company was carrying out the obligation imposed by its acceptance of the land-grant. Without specific stipulations by sureties, there could be no obligation on their part for the company, nor, without specific stipulations by the company, could there be any requirement on its part to perform many of the duties specially designated in the written contract. The Postmaster-General may have deemed it expedient for the public interest to change, enlarge, or omit entirely the requirements previously prescribed, and

to call for others of a different character. No implication can arise, one way or the other, from his inaction. All that the company could ask or expect under the law was that he should prescribe a reasonable compensation for its service, and that the service would be continued so long as the public interests should require. No implication of law could extend further than this.

And as to the alleged duration of four years, it is sufficient to say, that the regulation of the department referred to was designed only to further the administration of the postal service, not to impose any obligation on the Postmaster-General; and it would be against all analogies to hold that a continuance of service, after the termination of a written contract for years, creates an obligation of a renewed contract, not merely upon a like compensation, but for the same duration of time. There is no principle that could justify the implication.

*Decree affirmed.*