Richardson, Ch. J.,
delivered the opinion of the court:
The contracts upon which this action is founded were not made by formal instruments “ reduced to writing, and signed by the contracting parties with their names at the end thereof,” as required of contracts made with the Secretary of War, the Secretary of the Navy, and the Secretary of the Interior, by Revised Statutes, section 3744. They arise from numerous orders made by the Postmaster-General, as contemplated by Revised Statutes, sections 4002 and 405, from various statutes of the United States, from the regulations and practice of the Post-Office Department, and from the acts of the parties themselves forming the res gestee of the transactions, all to be considered and construed together.
The Postmaster-General made the numerous orders set out in finding i substantially and practically in the form of the first order, as follows:
“Route 26021.— White Bear Lake, Minn., to Albert Lea.
“ 1879, Oct. 2. Authorize the Auditor of the Treasury for the Post-Office Department to pay the Minneapolis and Saint Louis Railwayr Company quarterly, for carrying the mail between White Bear Lake and Albert Lea from Julyl, 1879, to June 30, 1883, at the rate of $8,450.13 per annum (being $68.40 per mile per annum for 123.54 miles), unless otherwise ordered, subject to fines and deductions.”
*360 The rates of compensation were the maximum authorized by statutes (Rev. Stat., § 4002, as amended by Act of July 12,1876, ch. 179, § 1, Par. 2, Supp. Rev. Stat., 2?4, and Act of June 17, 1878, ch. 259, § 1, Par. 4, Supp. Rev. Stat., 359) for the weights and distances returned by the claimant in response to circulars sent out by the Postmaster-General under the provisions of said section 4002, excluding the distance of transporting mails to and from intermediate post-offices between the extreme ends of the routes, which were not more than 80 rods from the line of the road or stations.
The claimant has been fully paid, unless the company be correct in its contention upon two points of controversy which have arisen between the parties.
(1) In making payments the Postmaster-General allowed nothing extra beyond the amount computed upon the mileage of the road or railroad track and upon the distances from the terminal stations to the post-offices, for and on account of the transportation of the mails to and from intermediate stations and the post-offices thereat. For the latter service additional compensation is claimed.
(2) At the end of each quarter of a year the Postmaster-General made deductions from the amount otherwise due to the claimant on account of failure to fully perform the services required by reason of non-delivery of mails on schedule time. The amount thus deducted and retained by the defendant was $2,605.22, and that constitutes the second item now claimed.
In order to reach a correct conclusion upon these two questions at issue we must carefully consider the terms of the contract between the parties.
The voluntary compliance with the requests contained in the weight and distance circulars sent out by the Postmaster-General was an application for the service of carrying the mails by the claimant corporation, and the orders of the Postmaster-General were offers of the business at the prices therein stated. Those orders and the business were subject to the provisions of the statutes and the general regulations of the Post-Office Department, which the parties were bound to know, as well as to the usual and ordinary customs and practices of the Department in relation to railroad mail service, with which all persons engaged in that service are presumed to be familiar.
*361 All these taken together constituted the terms of the offers, and the claimant, by taking and carrying the mails, accepted those terms. We will examine the orders, statutes, regulations, and practices so far as they bear upon the two points in controversy.
(1) As to the claim of extra compensation for carrying mails to and from intermediate post-offices, the regulations provide, as set out in finding in, that—
“ Railroad companies are required to take the mails from and deliver them into the terminal post-offices and to all intermediate post-offices located not over 80 rods from the line of road, and the distances from the terminal depots to the post-offices where railroad companies deliver the mails are paid for by the Department as a part of the length of the route.”
The uniform practice of the Department from a time long anterior to the claimant’s service had been that the delivery of mails between intermediate stations and post-offices was not tó be paid for in addition to the amount computed upon the mileage of the tracks and terminal offices; and that, in our opinion, is the true interpretation of the regulation plainly implied if not expressed in terms.
It is contended on the part of the claimant that the company is entitled to the maximum rate per -mile which the statute authorizes the Postmaster-General to pay, and that the latter distances should be computed in establishing the mileage of the road. This same question has been considered and decided by this court in two previous cases. In the Hasten Railroad Case (20 C. Cls. R., 41; affirmed on appeal, 129 U. S. R., 391) we held that the statute (Rev. Stat ., § 4002) did not fix the exact amount to be allowed to railroads, but only the maximum which the Postmaster-General could not exceed, leaving to him a discretion to make contracts in his own way at less rates if he should be able to do so. In the Jacksonville and Mobile Railroad Company Case (21 C. Cls. R., 171; affirmed on appeal, 118 U. S. R., 626) we referred to the uniform practice of the Department to construe the compensation for carrying the mails to and from intermediate post-offices as included in the pay estimated upon the mileage of the railroad proper, and we said that—
u Such a well-established practice, in our opinion, must have been considered by Congress in fixing the maximum compensa *362 tion and by the Postmaster-General in making his orders allowing the full amount of the maximum, and therefore the pay for such services must be held to be included in the general compensation fixed for the routes. Had it [the company] objected in season the Postmaster-General might have reduced the route compensation. Having made no such objection the Postmaster-General had a right to infer that it acquiesced in the practice of the Department, and by such acquiescence it is bound.”
Further consideration serves to confirm our opinions thus expressed.. We adhere to our former rulings and decide against the company ou this demand.
(2) The claim for money deducted by the Postmaster-General and retained by the defendant, as set out in finding v, on account of delinquencies of the claimant, is urged on the alleged grounds that there was no authority for such action and that the delinquencies were caused by the elements and were unavoidable and not properly chargeable to the company.
The primary orders, the incipient proceedings in the contracts, set out in finding i, expressly make the service 11 subject to fines and deductions.” Such a condition is in accord with the statutes on the subject. Eevised Statutes, section 3962, provides:
“ Sec. 3962. The Postmaster-General may make deductions from the pay of contractors for failures to perform service according to contract, and impose fines upon them for other delinquencies. He may deduct the price of the trip in all cases where the trip is not performed; and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier.”
In the Jacksonville, Pensacola, and Mobile Railroad Company Case (21 C. Cls. R., 172; affirmed on appeal, 118 U. S. R., 626) it was urged by the claimaut that this section had been repealed, but we held it to be unrepealed and in force. In the case of the Chicago, Milwaukee and St. Paul Railway (127 U. S. R., 406), the same point was again urged and was the only one involved in the case. The Supreme Court decided as we had decided in the former case and sustained the power of the Postmaster-General to make deductions.
The regulations set out in finding ill also make provision for such deductions, and they have long beeu made in accordance with the 'practice and course of business of the Depart- *363 merit. These statutes, regulations, and practices were adopted into the contract by the words of the orders, subject to fines and deductions,” and the claimant is concluded by them.
The excuse set up that the delinquencies were unavoidable was proper matter for consideration by the Postmaster-General in the exercise of his discretion, and his decision can not be reviewed here in the absence of allegations of fraud or other irregularity. In the Otis Case (24 C. Cls. R., 61), the whole subject was considered, and the court said, among other things:
“ The statute makes the Postmaster-General the judge when a fine shall be imposed, and unless that power is exercised incompatibly with the reasonable and legitimate use of the power, parties contracting with the Government are bound by his action. The service to be performed is of such a character that a provision of that kind is essential to the successful performance of the most important function incident to the executive branch of the Government.”
That case is also referred to for further exposition of our views.
It is not to be overlooked that the claimant company was not one of those companies which were aided by the United States with grants of lands or issues of bonds, and so was under no obligations to carry the mails, and that it might at any time have abandoned the service if it were unwilling to accept the terms offered and imposed by the Postmaster-General, as was held in the ■'Eastern Railroad Case both by this court and by the Supreme Court.
The claimant has no cause of action, and his petition must be dismissed.