## UNITED STATES v. ATLANTIC COAST LINE R. CO.

(Circuit Court, E. D. North Carolina. June 16, 1910.)

1. POST OFFICE (§ 22*)—CARRIAGE OF MAILS—DUTY OF CARRIER—OBLIGATION TO UNITED STATES—BREACH OF CONTRACT.

Though a railroad company carrying United States mails under a contract is not with reference thereto a common carrier, and is not therefore liable as an insurer for its safe carriage and delivery, yet, if mail so carried is lost or destroyed by the railroad company's negligence or default, it may nevertheless be liable as for breach of contract.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 22.*]

2. POST OFFICE (§ 22*)—MAILS—DESTRUCTION—CARRIER'S LIABILITY—PLEADING.

An allegation that certain mail matter belonging to the United States was lost and destroyed by reason of the negligence and carelessness of defendant railroad company, causing a collision in which the mail and car containing it were destroyed by fire, was sufficiently comprehensive to cover any breach of duty imposed by the contract of carriage and was therefore sufficient.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 22.*]

3. POST OFFICE (§ 22*)—DESTRUCTION OF MAIL MATTER—RAILROAD WRECK— RAILROAD'S LIABILITY—DEFENSE.

In an action by the United States against a railroad corporation for breach of a contract to carry the mails arising from a railroad wreck and resulting in the loss and destruction of valuable mail matter, it was no defense that the wreck resulted from the negligent acts of the railroad company's employés in failing to properly discharge assignable du-

----

ties. and not from acts and omissions imputable to the corporation as such.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 43; Dec. Dig. § 22.*]

4. POST OFFICE (§ 22*)—DESTRUCTION OF MAIL—LIABILITY OF CARRIER—RIGHT TO USE.

Where the United States had received fourth-class mail matter and engaged to transport the same in consideration of the charges exacted, it had sufficient interest in the property mailed to entitle it to maintain an action against the carrier for the value of such mail lost or destroyed through a breach of the carrier's contract to transport the mails with due and reasonable care, though the government was not liable to the owner of the mail for its value.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 43; Dec. Dig. § 22.*]

Action by the United States against the Atlantic Coast Line Railroad Company. On demurrer to complaint. Overruled.

Plaintiff complains in three causes of action, alleging:

(1) That prior to the 18th day of April, 1904, it was the owner and in the possession of certain mail pouches, mail sacks, keys, etc., of the value of $135.85. That defendant was on and prior to February 13, 1900, and has been continuously since said date, a corporation carrying on, pursuant to the power conferred in its charter, the business of a common carrier engaged in interstate commerce, operating a line of railroad between Weldon and the county of Halifax, in the state of North Carolina, and the state line dividing the states of North and South Carolina. That plaintiff, on February 13, 1900, entered into a contract with defendant, whereby defendant engaged to carry mail equipment over the line of its railroad between the town of Weldon and the line dividing the states of North and South Carolina and between other points and stations on said railroad, which said line was designated as mail route No. 118,002, at a compensation of $59,792.16 per annum, being $346.28 per mile for 172.67 miles and railway post office car service at the rate of $17,260 per annum, being $100 per mile for 172.60 miles. That, in pursuance of said contract and other like contracts, there was existing and in force, on the 18th day of April, in the year 1904, an authorized United States mail service designated as the Washington & Charleston Railway post office train running between the city of Washington, D. C., and the city of Charleston. S. C., of which the said line between Weldon, N. C., and the said state line formed a part. That, under the contract aforesaid, it was the duty of the defendant to carry, in a safe and secure manner, over the line of said mail route, such railway post office car, and the mail matter and mail equipment therein contained, as should be delivered to it by the plaintiff, or its agents, for that purpose. That on the said 18th day of April, 1904, at Lucama, in the county of Wilson, in the state of North Carolina, on the mail route aforesaid, the defendant, its agents and employés, then and there having in its possession the said railway post office car and the said mail equipment therein contained, as a part of its train No. 35, so negligently and carelessly managed and operated the engine drawing said train, and the railway post office 'car attached thereto, which contained the mail equipment aforesaid, and the defendant, its agents and employés, so carelessly and negligently managed and operated another train and the engine drawing said other train, and the cars attached thereto, on said line of railroad, and the defendant, its agents and employés, negligently and carelessly permitted its railroad track at said Lucama to be in such defective condition and poor repair, as negligently and carelessly to cause a collision between said trains. and negligently and carelessly in the manner aforesaid and in another and other manners to cause the wreck, burning and destruction of said railway post office car attached to said train No. 35 and the mail equipment aforesaid therein contained; said equipment being of the value of $101.89.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(2) For a second cause of action, plaintiff alleges the matters set out in its first cause of action in regard to defendant's corporate existence, etc., and its contract with defendant, and: "That, under the contract aforesaid, the defendant had in its possession as bailee of the plaintiff on the 18th day of April, in the year 1904, one certain railway post office car which contained mail matter and mail equipment, which had theretofore been delivered to the defendant by the plaintiff under said contract. That, as a part of the mail matter in said cars, the defendant had in its possession on the date aforesaid certain pieces of registered, ordinary, and foreign mail matter, which is described in the complaint. and consisted of 46 registered parcels containing medallions, periodicals, pistols, crayons, pictures, books, merchandise, watches, cash, diamonds, jewelry, and numerous other articles of the aggregate value of $9,154.54. Many of the parcels were mailed in Paris and addressed to persons at Havana, and other points in Cuba." Plaintiff alleged the negligent destruction of the mail car as its first cause of action, and further: "That on the 18th day of April, 1904, and upon other subsequent days, after the negligent wrecking, burning, and destruction of said train No. 35, at Lucama, in the county of Wilson, state of North Carolina, on the mail route aforesaid, the defendant, its agents and employés, knew, immediately after said wreck occurred, that there was in the débris of said railway post office car, and its contents, certain valuable matter, including certain and sundry precious stones or diamonds, of great value; nevertheless, the defendant, its agents and employés, wholly regardless of its duty, utterly failed and neglected to guard, protect, preserve, and rescue from said fire, loss, and destruction, and from the depredations of its own agents and employés and of other persons, the débris of said railway post office car and the said valuable matter which it contained, which could have been rescued and preserved by the defendant, its agents and employés, from said fire, loss, and destruction, and from the depredations of said agents, employés, and persons. But, on the contrary, plaintiff is informed and believes, and on such information and belief alleges, that the defendant, its agents and employés, in violation of its said duty, permitted other persons to rifle the débris of said railway post office and its contents and to pillage for and carry away large quantities of said valuable matter to the value of $9,154.54."

(3) That, repeating the allegations in the first and second causes of action regarding the duty of defendant in the premises, it avers that, after the destruction of the car, defendant's agents and servants pillaged and carried away the diamonds in defendant's possession and under its control as aforesaid.

Defendant demurred to the complaint:

(1) For that said complaint does not allege that the said defendant was a common carrier of mail, nor a bailee thereof, and hence sets forth no breach of duty running to the plaintiff herein in regard thereto.

(2) For that said complaint shows no duty upon said defendant, either at law or under the contract referred to, to guard the said mail matter mentioned.

(3) For that said complaint does not allege that the said United States mail matter, alleged to have been lost and destroyed, was the property of the plaintiff herein, or that the plaintiff had any special or property interest therein; hence shows no right in said plaintiff to maintain this action.

(4) For that said complaint does not allege that the said plaintiff has been damaged or suffered any loss whatever, either in its own property, or its rights, or any loss or damage of property for which it is accountable to others; hence sets forth no cause of action against this defendant.

(5) For that said complaint does not allege that the said defendant has been negligent in any nonassignable duty imposed upon it by law or by the alleged contract, and does not allege that said defendant has been negligent or careless in the selection of its employés and servants engaged in the operation of the train specified in said contract.

(6) For that it appears from the facts stated in the said complaint that the plaintiff, neither in its own right, nor as custodian of the mail matter therein referred to, suffered any loss or damage by reason of the destruction and loss

of said mail matter alleged· in and by said complaint, since, in accordance with the statute in such case made and provided, the plaintiff was not and is not liable to the owners of said mail matter for the full value thereof.

(7) For that it appears from said complaint that the plaintiff is undertaking therein and thereby to consolidate 45 different, separate, and independent causes of action brought by it as trustee or bailee for and on behalf of 45 different persons, the interests of said different persons being diverse and not identical, and is thereby improperly attempting to join 45 separate causes of action in one complaint.

(8) For that several causes of action have been improperly united in the said complaint, in that plaintiff seeks to recover in and by said declaration the value of certain property and mail matter belonging to many different persons, which were destroyed or lost, which did not belong to the plaintiff, but belonged to many different persons who are not parties to this action, which were destroyed while in the possession of the plaintiff as bailee by the alleged negligence of the defendant, and also to recover the value of certain mail equipment belonging absolutely to the plaintiff, and which it alleges was destroyed by the negligence of the defendant.

(9) That the plaintiff improperly united in the complaint a cause of action in its own right with·a cause of action in its right as bailee.

H. F. Seawell, Dist. Atty., for the United States.
George Elliott and Davis & Davis, for defendant.

CONNOR, District Judge (after stating the facts as above). [1] If it be conceded, as the authorities hold, that defendant ·is not, in respect to carrying the mail, a common carrier, and therefore not an insurer of its safe carriage and delivery, yet it is alleged and, pro hac vice, admitted that, as authorized by its charter, and by congressional legislation,· it entered into a contract with plaintiff for a valuable consideration to carry the mail—that is, the railway post· office car, the equipment, and the mail matter therein—between the points designated in the complaint. This contract certainly imposed some degree of care—at the·least ordinary care—to carry it safely. It is alleged that it so negligently and carelessly managed and operated its train, engine, etc., and that the track was in such defective condition, that two of its engines collided, causing the burning and destruction of plaintiff's property—its mail equipment committed to the care of defendant pursuant to and for the purposes set out in the contract. Unless, as contended by defendant, it is only liable for its corporate act or omission and not for the negligent manner in which its agents and employés discharged their duties, it would seem clear that, for the destruction of the plaintiff's property—the equipment, etc.—defendant is liable for a negligent breach of contractual duty.

[2] The general terms "negligently" and "carelessly" are sufficiently comprehensive to cover any breach of duty imposed by the contract—it is not necessary, or usual, to make the allegation more specific in regard to the degree of care imposed by the relation existing between the parties—this being, upon the evidence, a question of law. But the defendant insists that, as the complaint sets out the negligent acts, or omissions, of defendant's agents and servants resulting in ·the destruction of the property, the court must see, as matter of law, that such acts and omissions are not imputable to the corporation, but show a failure on the part of employés to discharge

assignable duties, and that for these the corporation, in the absence of any allegation of negligence in the selection of its agents and employés, is not liable. The question presented is interesting and not free from difficulty. The authorities cited by the learned counsel (Bank v. Minneapolis, St. P., etc., R. R. Co. [C. C.] 113 Fed. 414, and Bankers' Mut. Cas. Co. v. Minn., St. P. & S. S. M. Ry. Co., 117 Fed. 434, 54 C. C. A. 608, 65 L. R. A. 397) were suits brought by the owners of the mail lost by the alleged negligence or misconduct of subordinate employés of the corporations. The point decided in both cases and fully sustained by the decisions cited is that the action cannot be maintained for the reasons and upon the principles set out. The decisions went upon the principle that there was no contractual relation between the plaintiff and the railroad company, which in carrying the mail was acting as a public agency, employed by the government in discharging a governmental function. Banking Co. v. Lampley, 76 Ala. 357, 52 Am. Rep. 334. In Bank v. Minn., St. P., etc., R. R. Co., supra, Lochren, District Judge, says:

"A railway company carrying the mail does not assume any of the duties of a common carrier. No one but the government can require or receive such service, and the duties and responsibilities of such railway carrier of mails are measured by the terms of the contract, and by the provisions of the postal laws and regulations."

No case has been cited in which the government has sued for loss of mail occasioned by the negligence of the carrier or its employés based upon an alleged breach of the contract of carriage. While it may be that, as between the citizen, whose mail is carried by the railroad, as a public governmental agency and the carrier, no privity of contract exists, it does not necessarily follow that, when sued by the government for breach of a contractual duty, the company is not liable for the wrongful or negligent acts or omissions of its agents and employés, as in other cases of a contract for carriage. It is not easy to draw the distinction between those duties which can only be discharged by the corporation, acting in its corporate capacity, and those which it necessarily discharges through the medium of agents, servants, and employés acting within the scope of their employment.

[3] The corporation undertook, by its contract, to safely carry; that is, use ordinary care as a bailee for hire in carrying the mail equipment, etc. This it could do only by maintaining its tracks in a reasonably safe condition, and by operating its trains by means of engineers, conductors, and other employés intrusted with the discharge of such duty. Ordinarily it is conceded that it is liable for the negligence of these employés. It is not clear why, when the plaintiff enters into a contract with the corporation, to aid it in the performance of its duty to the public, the same principles governing the rights and duties of the parties, as in other similar contracts, do not apply. If the action was in tort, other principles might be invoked. The court cannot take judicial notice of the division of duties made by the company among its employés in the management and operation of its road and trains. The demurrer to the first cause of action must be overruled.

[4] In addition to the causes of demurrer assigned to the first, it is insisted that, as to the second cause of action for the loss of the diamonds and other articles contained in the mail pouches, the plaintiff had no property or interest, that it was not liable to the owner, and that, in no aspect of the case, is defendant liable for their value. Assuming that the defendant would be liable to plaintiff if it had been the owner of the diamonds, it would seem that, to the extent that plaintiff had a special property as bailee for carriage, it would recover at least nominal damages for breach of the contract of carriage. The Postmaster General is empowered to establish a uniform system of registration, and to provide rules under which the sender of first-class registered matter shall be indemnified for losses thereof in the mails not to exceed a fixed amount. R. S. § 3926 (U. S. Comp. St. 1901, p. 2685); 5 Fed. Stat. Anno. 871, amended by 32 Stat. L. 117 (U. S. Comp. St. Supp. 1909, p. 1008). The articles alleged to have been lost were fourth-class matter, and for these it seems no indemnity is provided. 20 Stat. L. 358, 5 Fed. Stat. Ann. 828 (U. S. Comp. St. 1901, p. 2646). It would seem, therefore, that the plaintiff is not liable to the owner of the diamonds and other articles lost by the burning of the mail car.

The only case in point which has been cited is The Winklered, L. R. Prob. Div. (1902) 42. In that case it is held that, when a vessel carrying the mail was sunk by a collision with another vessel, the Postmaster General could recover of the defaulting vessel the full value of the mail thus lost, upon the principle that as bailee of the mail he was entitled, as against a wrongdoer, to recover for the benefit of the owner the full value of the property destroyed. See, also, National Surety Co. v. United States, 129 Fed. 70, 63 C. C. A. 512. There the plaintiff in error had become surety on the bond of a mail carrier who converted to his own use a letter committed to his care for carriage containing $11. The government sued for this amount. The owner of the letter had made no demand upon the government for the money. The plaintiff in error contended:

"That the United States is entitled to no recovery in any event because it has neither incurred any liability, nor suffered any loss, by the theft of the money by the principal in the bond."

To this contention Sanborn, Circuit Judge (for the Circuit Court of Appeals, Eighth Circuit), said:

"The right of the nation, however, to a recovery in this action, is not necessarily limited by the acts or omissions of the owner of the stolen money since the theft. It depends upon the facts and circumstances when the money was stolen. When this was done the money was in the custody—the possession—of the United States, under its contract with those who had intrusted the letters to its care to safely carry and deliver them to their addresses for the valuable consideration which it had received by virtue of the stamps upon the letters which had been purchased from it. The contract between the United States and the owners of the letters was a bailment of the class known as 'locatio operis mercium vehendarum.' It was a carrier—a bailee of the letters for hire of labor or service. From this carrier, or bailee, Eich took and converted the letters to his own use. But a bailee may maintain an action of trespass, of trover, or of conversion against a wrongdoer for the disturbance of his possession of the property. The United States, there-

fore, was not without sufficient interest in the subject-matter to enable it to recover of Eich, the letter carrier, the entire value of the property he took, or its damages for the conversion of the money"—citing The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993, and other cases.

The learned counsel for defendant insist that these decisions are not conclusive of the merits of this case. This must be conceded; but they are in point upon the right of the plaintiff to sue for the wrongful conversion or destruction of the property committed to its care for carriage through the mail. Whether the defendant is liable for the loss of a registered package containing diamonds and jewels without notice of such contents is an interesting question. The question whether any other or different liability accrues by reason of defendant's agents and employés converting the diamonds after the destruction of the car than for negligently permitting other persons to do so is not free from difficulty. I am of the opinion that the action can be maintained for the value of the equipment destroyed by the negligence of defendant's agents and servants. The other causes of action are much more doubtful; but upon a careful consideration of the entire case the demurrer will be overruled to the end that the defendant may answer, and upon a full development of the case present its defenses. There is no misjoinder of parties or causes of action. If, at any time during the progress of the cause, it should appear to be necessary or proper, the owners of the diamonds may be made parties plaintiff.

Demurrer overruled, and defendant allowed 60 days within which to file answer.