GREAT NORTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1916.)

No. 4593.

1. Post Office ⊜⇒21(1)—Contracts for Carrying Mails—Mode of Entering into Contracts.

Where a railroad company, which had been carrying the mails, accepted a distance circular relating to the carrying of mails, providing that it should carry the mails subject to the acts of Congress and regulations of the Post Office Department, a contractual relation was established, and the rights of the parties are to be measured by the distance circular.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–29; Dec. Dig. ⊜⇒21(1).]

2. Post Office ⊜⇒21(1)—Contracts for Carrying Mails—Modification.

Where a contract for the carrying of the mails was embodied in a distance circular furnished by the Post Office Department, the contract as made was binding on the United States, and a modification by it was unauthorized.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–29; Dec. Dig. ⊜⇒21(1).]

3. Post Office ⊜⇒21(4)—Carrying of Mails—Power of Postmaster General.

The power of the Postmaster General to impose fines upon carriers of the mails for delinquencies, conferred by Rev. St. § 3962 (Comp. St. 1913, § 7450), not being known to the common law, cannot be enlarged by inference or intendment.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 32–39; Dec. Dig. ⊜⇒21(4).]

4. Post Office ⊜⇒21(1)—Contracts—Construction.

Where for a long time a railroad company acquiesced in postal regulations applicable to contracts and statutes relating to the carrying of the mails, such acquiescence will not be disregarded without the most persuasive reasons.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–29; Dec. Dig. ⊜⇒21(1).]

5. Contracts ⊜⇒147(1)—Construction—Duty of Court.

The prima facie duty of a court in construing a contract is to ascertain and effectuate the intention of the parties, as shown by the language of the instrument, their relation to each other, and the subject-matter of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 730; Dec. Dig. ⊜⇒147(1).]

6. Post Office ⊜⇒21(4)—Contracts for Carrying of the Mails—Authority of Postmaster General to Impose Fines.

A contract for the carrying of the mails was entered into by a railroad company's acceptance of a distance circular furnished by the Postmaster General, which declared that the company should perform mail service upon the conditions prescribed and the regulations of the department applicable to railway mail service. Rev. St. § 3962, declares that the Postmaster General may make deductions from the pay of contractors for failure to perform services according to contract, and impose fines upon them for other delinquencies, and may deduct the price of the trip in all cases where the trip is not performed, and not exceeding three times the price if the failure be occasioned by the fault of the carrier. It had been the custom of the parties in relation to such contracts to allow the Post Office Department to make payments of sums due as they accrued, and to

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deduct from earnings under subsequent contracts the amount of fines imposed for delinquencies. After the contract was entered into the Post Office Department deducted from earnings under such contract the amount of a fine for a delinquency occurring under an earlier contract. *Held*, in view of the long acquiescence of the railroad company and the obvious intention of the parties that they should be governed by the rules and regulations of the Post Office Department, such deduction was justified.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 32–39; Dec. Dig. ⊚⟶21(4).]

7. POST OFFICE ⊚⟶21(4)—CARRIAGE OF MAILS—FINES FOR DELINQUENCY.

Under such statute, the Postmaster General is not, where the delinquency resulted in the destruction of mails, restricted to a fine in three times the amount earned by the railway company on the trip on which the delinquency occurred, but may make deduction commensurate with the loss sustained; public policy requiring that the mails shall be carried subject to postal regulations, and the statute authorizing the imposition of fines for delinquencies other than the failure to perform services according to the contract.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 32–39; Dec. Dig. ⊚⟶21(4).]

8. POST OFFICE ⊚⟶21(4)—CARRIAGE OF MAILS—AUTHORITY OF POSTMASTER GENERAL.

Under Rev. St. § 3962, the Postmaster General may impose on mail carriers fines for delinquencies without limitation, and his determination is not subject to review, unless he manifestly abuses or exceeds the power conferred.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 32–39; Dec. Dig. ⊚⟶21(4).]

In Error to the District Court of the United States for the District of Minnesota.

Action by the Great Northern Railway Company against the United States. There was a judgment for the United States, and plaintiff brings error. Affirmed.

Sanford H. E. Freund, of St. Paul, Minn. (E. C. Lindley, of St. Paul, Minn., on the brief), for plaintiff in error.

Alfred Jaques, U. S. Atty., of Duluth, Minn.

Before HOOK and ADAMS, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. This is an action prosecuted by the plaintiff in error (hereinafter referred to as the plaintiff) to recover of the defendant in error (hereinafter referred to as the defendant), the sum of $400, with interest thereon from November 7, 1911, the same being the amount deducted by the Postmaster General from sums due the plaintiff under an agreement for carrying the United States mail on the route named in the pleadings, for a period of four years, commencing July 1, 1911, and ending June 30, 1915, the same being a fine imposed by the Postmaster General, on October 23, 1911, for and on account of a wreck of the railway company's train at Clontarf, Minn., a point on said route, November 25, 1908. It is admitted on the face of the record that the relation of the parties, plaintiff and defendant, with reference to the carrying of mail on said route, and the right of

the plaintiff to recover herein, was and is controlled by the following state of facts:

That for a number of years immediately preceding July 1, 1911, the plaintiff had been transporting the mails of the United States over its line of railway over the said route, designated as No. 141,006, authorized thereto by the Postmaster General and in accordance with the postal laws, regulations, and practices of the Post Office Department. That the four-year term for which the compensation for such services had theretofore been adjusted in accordance with said laws, and the rules and practice of said department, expired by limitation June 30, 1911. That theretofore, February 17, 1911, the Postmaster General, in conformity with the practice of the Post Office Department, under the authority of the statutes of the United States, submitted to plaintiff a "distance circular" proposing the continuance of the carrying of said mails over said route by the plaintiff for a new term, beginning July 1, 1911, and to end June 30, 1915. That thereupon the plaintiff complied with the terms and conditions required by the said circular and executed the same under date of February 17, 1911, and duly transmitted the same to the Post Office Department. That said circular, so executed and forwarded, contained the following provision:

"The company named below [plaintiff] agrees to accept and perform mail service upon the conditions prescribed below and the regulations of the department applicable to railway mail service."

That said "distance circular" was required, was furnished, executed, and delivered in accordance with the plans theretofore provided by the Postmaster General, and readjusted the compensation on said route in accordance with the provisions of section 4002 of the Revised Statutes of the United States (Comp. St. 1913, § 7483), and Act July 12, 1876, c. 179, 19 Stat. 78, 82, as amended by Act June 17, 1878, c. 259, 20 Stat. 140, 142, at the rate therein specified, and by an order of the Postmaster General dated October 13, 1911, and made a part thereof, which order provided, in addition to the compensation for services to be rendered, a specification of cars, and also provided:

"This adjustment is subject to future orders, and to fines and deductions * * *"

—which said order was so made in accordance with the uniform practice of the Post Office Department, and the provisions of the Revised Statutes of the United States, was dated October 13, 1911, and notice of such order on that date given to the plaintiff. That theretofore, during the period preceding the term beginning July 1, 1911, on, to wit, November 28, 1908, a wreck occurred on the line of the plaintiff, at Clontarf, a station on said route, and a large quantity of mail and mail equipment was destroyed, and which wreck was caused by plaintiff's negligent operation of its train on which said mail was being transported. That thereafter, and before the expiration of the four-year period ending June 30, 1911, on November 7, 1910, the plaintiff was notified by the defendant, through the Second Assistant Postmaster General, to show cause why a fine should not be imposed for

the loss of said mail and equipment in accordance with the provisions of section 3962 of the Revised Statutes of the United States.

After the expiration of the term ending June 30, 1911, and after the beginning of the new term, to wit, October 23, 1911, the Post Office Department, in accordance with the terms of said section 3962 of the Revised Statutes of the United States, imposed a fine of $400 on the plaintiff for and on account of the said "delinquency" in the transportation of the mails, and at once notified plaintiff of the imposition of said fine, and thereupon the defendant did withhold and deduct the said $400 from the compensation earned by the plaintiff under its agreement with the defendant for and during the term beginning July 1, 1911. Defendant's Exhibit A was a certified copy of certain files and records of the Post Office Department, and was a notice to defendant of the imposition of certain fines by the Post Office Department for delinquencies during the first term above referred to, amounting to $13, with a notice as follows:

"October 30, 1907.
"Sir: The amount noted on reverse side of this notice has been ordered deducted from the pay of your company on the route and for the quarter named. This action is taken in pursuance of authority conferred by section 3962, Revised Statutes of the United States. The right is reserved to make disallowances from future payments for other failures or delinquencies, if any have heretofore occurred, and to correct errors and omissions.
"Very respectfully,                          J. T. McCleary,
                    "Second Assistant Postmaster General."

Another portion of Exhibit A referred to a different page of the same record and contained a list of seven delinquencies, amounting to $36, was dated April 31, 1908, with notice and reservation of right to make disallowances for delinquencies, if any had theretofore occurred in the language above noted, and as a part of said Exhibit A, same being another page of said exhibit, was a further notation of five delinquencies, amounting to $8, dated October 4, 1909, with the same notice. Page 5 of said exhibit was a notice of three delinquencies, dated August 4, 1910, with the same notice as the exhibit last above named. Page 6 of said Exhibit A was a notice of assessment of fine for two delinquencies, dated April 4, 1911, with the same notice.

Upon the acceptance of the distance circular the plaintiff agreed to perform the service of carrying the mail "upon the conditions prescribed by law and the regulations of the department applicable to railway mail service," but takes exception to Postmaster General's order No. 412, dated June 7, 1907. Thereupon the Second Assistant Postmaster General, under date of July 6, 1911, wrote the plaintiff as follows:

"Sir: This office is in receipt of a distance circular for route No. 141,006, from Minneapolis to Moorhead, Minn., signed by you, for the term beginning July 1, 1911, and ending June 30, 1915, for railroad mail service by your company. Note is taken of the modification made by you in the agreement clause, in which you except order No. 412 issued by the Postmaster General June 7, 1907. In regard to this I have to advise you that the department will not enter into contract with any railroad company by which it may be excepted from the operation or effect of any postal law, regulation, or order of the Postmaster General, and it must be understood that, in the perform-

ance of the service, from the beginning of the contract term above named and during the continuance of such performance of service, your company will be subject as in the past, to all the postal laws, regulations, and orders of the Postmaster General, which are now or may become applicable during the term of this service."

November 2, 1911, the Postmaster General approved the orders and regulations originating claims and affecting the accounts of the Post Office Department and postal service, including, among others, the following: First identifying the route in question; then:

"From July 1, 1911, to June 30, 1915, pay the Great Northern Railway Company, monthly, for the transportation of the mails between Minneapolis and Moorhead, Minn., at the rate [rate and specifications of cars, etc., omitted] in accordance with agreement. This adjustment is subject to future orders, and to fines and deductions. * * * "

And notice of said adjustment was on October 13, 1911, transmitted by defendant to plaintiff, which notice included the following:

"This adjustment is subject to future orders, and to fines and deductions. * * * "

Judgment below was for defendant. Plaintiff brings writ of error, and contends, first, that the distance circular above named, and its acceptance, constitute a contract. Defendant insists that under the facts above set forth that the contract between the plaintiff and defendant was one not reduced to one form or instrument of writing, but was evidenced by the agreement of the railway company to perform services in accordance with the postal laws and regulations on its part, and by the readjustment of the compensation under Revised Statutes, § 4002, and the act of July 12, 1876 (19 Stat. 82), and supplemental acts, by the Postmaster General, on the part of the United States, that the contract was a continuing one which had been entered into long prior to July 1, 1911.

[1, 2] These contracts were for four years and were expressly authorized by law. They were therefore valid and binding on the United States, as well as upon the railroad company, for that length of time. They contained within themselves a mode for lessening or, if deemed best, for discontinuing entirely the described service, and provided for a proportionate reduction of the stipulated compensation. In no other mode could the contract be changed, except by the mutual assent of the parties. Any change attempted by either, otherwise, would have been merely a breach of the agreement, and the United States would have been liable to damages for its breach in the same manner and to the same extent as a private party, for which a suitable remedy was provided by law in the jurisdiction conferred upon the Court of Claims. C. & N. W. Ry. Co. v. United States, 104 U. S. 680, 26 L. Ed. 891.

Contractual relation is established by the distance circular and its acceptance, and is uniformly assumed and recognized by the courts. Where the service is performed under such distance circular and acceptance, it is performed under a contract between the government and the company doing the service. United States v. Atlantic Coast Line R. R. Co. (C. C.) 189 Fed. 779. In speaking of a contract of this kind, Justice Lamar said, in delivering the opinion of the Supreme Court

in Atchison, Topeka & Santa Fé Railway Co. v. United States, 225 U. S. 640, 32 Sup. Ct. 702, 56 L. Ed. 1236:

"This contract was to expire June 30, 1907, by limitation; and, with a view of obtaining data, and proposing terms for a new arrangement to begin July 1, 1907, the postal authorities, in February, mailed to the company a 'distance circular,' which, among other things, stated that the company was 'to accept and perform mail service under the conditions prescribed by law and the regulations of the department.'"

In Jacksonville, Pensacola & Mobile Ry. Co. v. United States, 118 U. S. 626, 7 Sup. Ct. 48, 30 L. Ed. 273, plaintiff had a written contract with the government for the transportation of the mails between certain designated points from July, 1871, to July, 1875, at prescribed rates. After the termination of the contract, the plaintiff continued to carry the mail, as previously, without notice from the Postmaster General that the price to be allowed for the service would be in any respect different, until March, 1876, when he fixed the rate of compensation at a less sum for the service until June 30, 1876. Plaintiff performed the service notwithstanding this reduction and the reduced price was received. From July, 1876, to June, 1880, the same service was performed by the plaintiff, but further reductions from the compensation previously allowed, were made, under the acts of Congress of July, 1876, and June, 1878. Notice was given to the company, but the service was continued. A suit was brought by the railway company to recover the difference between the price thus allowed and the price paid previous to July, 1876, at which time the original contract terminated. It was contended that by the continuance of the service of the plaintiff after June 30, 1876, without objection by the Postmaster General, a contract was implied that the same compensation should be subsequently allowed. This contention was denied, and it was held that:

"All that the plaintiff could ask or expect under the law was that the Postmaster General should prescribe a reasonable compensation for its services, and that the service would be continued so long as the public interest should require. No implication of law could extend further than this."

It was further held that:

"It would be against all analogies to hold that a continuance of service after the termination of a written contract for years creates an obligation of a renewed contract, not merely upon a like compensation but for the same duration of time. There is no principle that could justify the implication."

Neither the railway company nor the United States were bound to continue the indefinite relation begun with the contract representing the first four years' service above referred to, and under which the rights and liabilities of each arose from day to day, as the services were performed by one and for the benefit of the other. Atchison, Topeka & Santa Fé Ry. Co. v. United States, 225 U. S. 649, 32 Sup. Ct. 702, 56 L. Ed. 1236. Instances might be multiplied where different courts have recognized the contractual relation between the government and its mail carriers, and we are therefore of the opinion that a distance circular and its acceptance constitute a contract for a separate and distinct term of four years. That the Postmaster General himself recog-

nizes this fact is shown by the admission in the answer and counterclaim filed herein, wherein it is said that the Postmaster General "entered into a certain agreement with the plaintiff for the transportation of the mail," referring to this same distance circular and its acceptance.

[3-6] Having found that this distance circular and its acceptance constitutes a separate contract, it is the contention of the plaintiff that the Postmaster General is without authority to satisfy a fine imposed for a delinquency under a previous contract, fully completed. It is admitted that the four-year term within which the "delinquency" occurred expired by limitation June 30, 1911, that the damage to defendant's mails and equipment resulted from the plaintiff's negligence, and that the defendant imposed a fine of $400 therefor and retained the same from the moneys due and earned during the term beginning July 1, 1911. Section 3962 of the Revised Statutes provides:

"The Postmaster General may make deductions from the pay of contractors, for failure to perform service according to contract, *and impose fines upon them for other delinquencies.* He may deduct the price of the trip in all cases where the trip is not performed; and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier."

It will be observed that the power to fix and make deductions is conferred upon the Postmaster General, subject to the limitation that he may deduct the price of the trip in all cases where the trip is not made, and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier and "he may impose fines for other delinquencies." This power to impose a fine is one that is not known to the common law and cannot be enlarged by inference or intendment. Its remedy must be found in the specific contract which authorizes it. United States v. Atlantic Coast Line R. R. Co. (D. C.) 206 Fed. 190–196. It is a fair and reasonable conclusion that, in fixing the rate of compensation for carrying the mail, due regard was had to the provisions of section 3962 of the Revised Statutes, and the construction theretofore put upon it by the department in fixing the extent of the carrier's liability for defaults and delinquencies, and that such construction was in the contemplation of both plaintiff and defendant at the time of making the contract.

The regulation of a department of the government is not, of course, to control the construction of an act of Congress when its meaning is plain; but the record in this case discloses that plaintiff, at the time of entering into the contract that became operative July 1, 1911, understood the interpretation that had been placed upon contracts of this character, and the authority under the provisions of section 3962 to deduct the amount of fines for delinquencies in a prior term from the earnings of a subsequent term, and consented thereto in other adjustments. This acquiescence in this regulation and rule of the department is not to be disregarded without the most cogent and persuasive reasons. United States v. Atlantic Coast Line R. R. Co. (D. C.) 206 Fed. 199; Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269. In addition to this, the defendant, through its Postmaster General, gave notice to plaintiff, at the time of each separate adjustment, that the same was made subject to future orders and

to fines and deductions. There is neither record of protest nor of any expression of dissatisfaction with this reservation on the part of the defendant, and it is undisputed that the contract for service beginning July 1, 1911, was made with knowledge of this reservation, of this rule and regulation, and of the intent and purpose on the part of the government to deduct from future earnings the amount of any fine for past delinquencies that had not been adjusted. It appears from the record that specific written notice was given by the defendant to plaintiff at the time of notice of acceptance of this contract of service, to begin July 1, 1911, that:

"It must be understood that in the performance of the service from the beginning of the contract term above named and during the continuance of such performance of service, your company will be subject, as in the past, to all the postal laws, regulations and orders of the Postmaster General which are now or may become applicable during the term of this service."

No question of public policy can be invoked to control the court in placing a fair, reasonable construction on the language of the contract, or to disturb the application of rules and interpretations founded upon reason and justice. The primary duty of a court, in determining the rights of the parties, is to ascertain and effectuate the intention of the parties. This must be done by examining the language used and looking to the relation which the parties bear to each other and the subject-matter of the contract. United States v. Atlantic Coast Line R. R. Co. (D. C.) 206 Fed. 200. We think, clearly, the assessment of the fine for past delinquencies and the deduction thereof from the amounts earned under the contract to begin July 1, 1911, were within the contemplation of both the plaintiff and defendant at the time this contract was made.

This authority has been claimed to be within the terms of these contracts for the carrying of the United States mails, and the benefits of the exercise of such authority have been claimed by railway companies, and recognized by the decisions of this and other courts. It affirmatively appeared by the stipulation of facts in Union Pacific Railroad Co. v. United States, 219 Fed. 427, 134 C. C. A. 325, that the contract between the government and the company in that case was for the period July 1, 1902, to June 30, 1906, and that at the expiration of that contract another contract, over the same route, was entered into by and between the parties thereto for the carriage of mail over that route from July 1, 1906, to June 30, 1910, and thereafter another contract was entered into between the same parties for the carriage of mail over the same route from July 1, 1910, to June 30, 1914. The wreck in that case occurred on the 7th day of December, 1905, the same being within the period of the first of the three contracts above named. The entire period of the first contract expired; then the second period from July 1, 1906, to June 30, 1910, expired; the company entered upon the third four-year period of carrying the mail, July 1, 1910. On July 1, 1910, a notice was received by the company that the sum of $3,000 for said delinquency occurring December 7, 1905, had been deducted from the pay of the company accruing for the month of June, 1910. The railway company there received the advantage of its position that

it had agreed to accept and perform the service upon the conditions prescribed by law and the regulations of the department, including Postal Regulation 1335, which was admitted and received as evidence in the case at bar, which provides, in substance, that fines will be imposed unless satisfactory excuse be made in due time for the delinquency therein named, which includes the delinquency complained of here.  Paragraph 2 of said section 1335 provides that:

"The fine will in each case be such sum as the Postmaster General may impose in view of the gravity of the delinquency and will be deducted from the contractor's pay for the service on the route on which the delinquency occurred."

The United States sought to recover the value of the registered mail which was destroyed, and a right of recovery was denied by the opinion of this court, for the reason that, under the agreed facts presented in the record, it had exhausted the remedy provided by law for whatever damages resulted from the railroad wreck in question, prior to the commencement of the suit, thus placing a construction upon the rights of the parties binding the government of the United States to a contemplation, at the time that contract was  entered into, of doing just what is complained of in the case at bar, and in that case the action of the Postmaster General in the assessment of the fine, protected the carrier from the larger damage sought to be recovered in that action.   It does not appear, however, that the question now insisted upon in the case at bar, was raised in that case; the defendant relying upon the fact that the fine had been imposed, and the government admitting, not only that the fine had been imposed, but that it had been imposed under the authority of section 3962 of the Revised Statutes, section 1335 of the Postal Regulations, and in conformity with the provisions of the contract under which the mails were being carried.

In United States v. Atlantic Coast Line Railroad Co. (D. C.) 206 Fed. 190, it appears from the statement of facts that the Postmaster General on February 13, 1900, entered into a contract with defendant (presumably for a period of four years from July 1, 1900, to June 30, 1904); that on the 8th day of April, 1904, a registered package was transmitted through the mail and was placed in the mail car attached to defendant's train April 18, 1904.  On the night of that day there was a wreck and the package was lost.  The collision was caused by the negligence of the defendant.  Pursuant to the provisions of section 3962 the Postmaster General on October 2, 1906, deducted from the amount due the defendant for mail service, under a contract "because of the destruction of mail and equipment in the wreck of train 35 near Lucama April 18, 1904, $500."  Thereafter the United States brought an action for damages for loss of the mail equipment and registered mail matter while in transit over its line of railroad.  Under these circumstances the defendant company relied for one of its defenses upon accord and satisfaction by reason of the imposition of the fine by the government for such delinquency, under section 3962 of the Revised Statutes.  This statute was referred to by the court as throwing light upon the interpretation of the contract and ascertaining the intention of the parties in respect to the liability of the defendant, and the remedy for

breach of its obligation. No question was there raised that the deductions had not been made from the earnings within the term of four years that included the date of the accident, but was actually deducted from the earnings of a subsequent term. The defendant there claimed the benefit of the interpretation of the contract and the action of the Postmaster General identical with that complained of in the case at bar. It was there held that the fine imposed by the Postmaster General operated as an accord and satisfaction of all claims accruing to plaintiff by reason of the destruction of the mail car. 206 Fed. 212, citing United States v. Oliver (C. C.) 36 Fed. 758.

The record in this case discloses that certain delinquencies, other than the one in question, occurred in the term which began July 1, 1903, and ended June 30, 1907, and the Postmaster General directed the amounts of the fines to be withheld from moneys earned by the plaintiff, under a readjustment made subsequent to the time of the occurrence of the delinquency, for which they were imposed. It does not appear that any objection was ever made by plaintiff to this practice and custom of the department under its interpretation of its authority under the statutes, rules, and regulations and provisions of the contract, though known to the plaintiff, and the moneys earned were paid regularly at stated periods, regardless of charges or fines to be imposed for past occurrences, to the advantage of the plaintiff. A different interpretation of the contract, rules, and regulations would have necessitated the government retaining in its hands the moneys earned by the plaintiff beyond the time upon which payments fell due, by the terms of the contract, until such time as adjustments could be made for *all* delinquencies occurring during the period named in the particular contract.

We are of the opinion that the action of the Postmaster General, complained of in the case at bar, was predicated upon an interpretation of the contract, statutes of the United States, and rules and regulations of the department, a construction of long standing, acquiesced in by the plaintiff, was in contemplation of both parties, and was specifically provided for in the distance circular and its acceptance, constituting the contract for service by the plaintiff beginning July 1, 1911, and the plaintiff cannot be heard to question defendant's right to make the deductions complained of in this action.

[7] The plaintiff, however, insists that, even if the Postmaster General had the right to make the proper deduction for the delinquency complained of herein, he could not in any event impose as a fine more than three times the amount earned by the railway company on the trip on which the delinquency occurred. He cites section 3962 of the Revised Statutes, which reads:

"The Postmaster General may make deductions from the pay of contractors, for failure to perform service according to contract, *and impose fines upon them for other delinquencies.* He may deduct the price of the trip in all cases where the trip is not performed, *and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier."*

Public policy requires that the mail shall be carried subject to Postal Regulations. The plaintiff in carrying the mails was not hauling

freight, nor was it acting as a common carrier, with corresponding rights and liabilities, but in this respect was serving as an agency of government and as much subject to the laws and regulations as every other branch of the post office. Atchison, Topeka & Santa Fé Ry. Co. v. United States, 225 U. S. 640–649, 32 Sup. Ct. 702, 56 L. Ed. 1236. This view of the plaintiff entirely overlooks the provision of the above statute, as follows:

"And impose fines upon them for other delinquencies."

For such delinquencies no limitation is attempted to be placed, and pursuant to that provision of statute, paragraph 2 of section 1335 of the Postal Rules and Regulations was enacted, and it is provided that:

The "fine will in each case be such sum as the Postmaster General may impose in view of the gravity of the delinquency."

This court, in considering the right of the United States to recover of a carrier damages for losses sustained by reason of a "delinquency" such as is contemplated by this statute, said:

"This view of the case ought not to be objected to by the United States, as it leaves with them a full and complete remedy at all times by the imposition of such penalties and deductions against any contractors, as will fully reimburse the government for whatever loss it may have sustained." Union Pacific R. R. Co. v. United States, 219 Fed. 427–437, 134 C. C. A. 325, 335.

It is further there stated that:

"Congress by section 3962, supra, has authorized the Postmaster General to make deductions from the pay of any contractors for failures to perform service according to contract, and to impose fines upon them for other delinquencies, and the fact that the Postmaster General by regulation No. 1335, above quoted, has specified the acts for which penalties may be imposed and deductions made, and the loss of mail in question being within the terms of said regulation, and the fact that heretofore, during the existence of the government, no case like the one at bar has been instituted, except United States v. Atlantic Coast Line Railroad Co., supra, leads irresistibly to the conclusion that the remedy of the United States for the loss of mail through the default of contractors is through the imposition of fines and the making of deductions, as provided for, in said section above quoted."

We have no difficulty therefore in determining that the Postmaster General had the right to make a deduction for the delinquency under this provision of statute, commensurate with the loss sustained by the government by reason of such delinquency, and that the provisions of said statute do not limit or attempt to limit or control the action of such officer or measure the amount of the fine by the value of the trip of the mail train wrecked.

[8] Objection is made by the plaintiff that this interpretation of section 3962 of the Revised Statutes places the power of imposing a fine within the Postmaster General of the United States, without limitation. We are of the opinion that, unless the Postmaster General manifestly abuses or exceeds the power thus conferred upon him, his action is the exercise of the power conferred upon him by the statutes and recognized by the terms of the contracts to be within his discretion, and is

not subject to review by the courts. Allman v. United States, 131 U. S. 31–35, 9 Sup. Ct. 632, 33 L. Ed. 51.

The order of the trial court, directing the entry of judgment in favor of the defendant and against the plaintiff, is affirmed.