## ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. UNITED STATES.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 716.   Argued April 30, 1912.—Decided June 7, 1912.

Public policy requires that the mail be carried subject to postal regulations, and that the Department and not the railroad shall, in the absence of contract, determine what service is needed and the conditions under which it shall be performed.

A railroad company, not required so to do by its charter, is not bound to furnish postal cars of the kind demanded or to accept terms named by the Postmaster General, but if it does carry the mail, it does so as an agency of the Government and subject to the laws and the regulations of the Department.

A railroad company cannot, by using a larger railway postal car than that authorized by the Department, recover the greater value of the car.

The Postmaster General can establish full railway postal lines, and as the greater includes the less, he can also establish half lines; he can abolish between two points a full line in one direction and a half line in the other.

THE facts, which involve claims made by a railroad company for furnishing railway post-office cars to the Government, are stated in the opinion.

*Mr. Robert Dunlap*, with whom *Mr. Wm. R. Smith, Mr. Lee F. English, Mr. James L. Coleman* and *Mr. Gardiner Lathrop* were on the brief, for plaintiff in error:

The parties were agreed upon the value of 60-foot postal car lines as the maximum rate prescribed by Congress, and as such car lines were in fact used by the Government it must be held as having agreed to pay that value. *Minneapolis &c. Ry. Co.* v. *Columbus Mill Co.*, 119 U. S. 149, is in no sense analogous.

The Government in fact accepted and used 60-foot cars during the entire period in question. There was no controversy between the parties as to the amount of pay which was proper for the use of a 60-foot car.

The railway company very plainly offered to the Government the use of 60-foot railway post-office cars. The use was for both directions, going and returning, upon the same route. The Government sought to force the railway company to furnish to it a 60-foot postal car in one direction and a 50-foot postal car on the return. The railway company, declining to divide the car line defined in the act of Congress, upon which it was entitled to base its pay, the attempt to reduce the compensation, not upon the ground that $40.00 per mile per annum was not the proper charge for a 60-foot car, but solely upon the ground that the Government only wished to use on the return trip of such car fifty feet of space therein, will not avail.

The Government having in fact accepted and used the car is bound to pay for such use what throughout this case it admits such car is worth. *Thompson* v. *Sanborn*, 52 Michigan, 141; *Griffin* v. *Knisely*, 75 Illinois, 412, 417, 418; *Conway* v. *Starkweather*, 1 Denio, 113.

The half lines R. P. O. cars order made by the Postmaster General, effective July 23, 1907, was made without authority, is evidently contrary to the act of Congress, is oppressive and unreasonable, and therefore, invalid.

Congress provided a system for computing the pay and

indicated the manner in which the railway company was to receive pay for the rent of its cars. The order of the Assistant Postmaster General in attempting to change such basis was not only in excess of the postal regulations, but sought to impose conditions not embraced in the law nor covered by any contract with the railway company, either express or implied. The order of the Postmaster General is a plain attempt to amend or add to the act of Congress. That is not permissible. *Morrill* v. *Jones*, 106 U. S. 466, 467; *Bruhl Bros.* v. *Wilson*, 123 Fed. Rep. 957, 958; *Hoover* v. *Salling*, 110 Fed. Rep. 43.

The Postmaster General had no authority to impose new and unjust or unduly burdensome conditions. *United States* v. *Stage Co.*, 199 U. S. 422; *United States* v. *Bostwick*, 94 U. S. 66.

The order is an attempt to change the express provisions of the law and thus change the basis of compensation without the consent of the railway company, the other party interested therein. It would be invalid. *United States* v. *Symonds*, 120 U. S. 46, 48, 49; *United States* v. *Barnette*, 165 U. S. 174, 178, 179; 2 Willoughby on the Constitution, 1326.

If there was no express agreement fixing the price for each car line, yet inasmuch as the Government in fact accepted and used 60-foot cars for the round trips, it was bound to pay the reasonable value thereof and the record shows the Government to have admitted such value of such car line to be the maximum fixed by Congress and the railway company was entitled to demand and receive that maximum unless and until it agreed to lease its cars for a less sum, which was not either claimed or shown.

A statutory maximum is the measure of the reasonable value of a carrier's service, the full extent of which it may lawfully demand. *Manchester &c. Ry. Co.* v. *Brown*, L. R. 8 App. Cas. 715; *Great Western Ry. Co.* v. *McCarthy*,

L. R. 12 App. Cas. 218, 235; *Wolcott* v. *Yeager*, 11 Indiana, 84.

There is the presumption, in the absence of a showing to the contrary, that the maximum rate fixed by the legislature is the measure of a reasonable charge, where less has not been specially agreed upon. *Beals* v. *Amador County*, 35 California, 624; *Archibald* v. *Thomas*, 3 Cowen, 284, 289.

The Government must pay for the kind of car which is in fact furnished and used. *Horton* v. *Cooley*, 135 Massachusetts, 589.

There was no evidence nor any fact admitted which tended to show that the maximum charge fixed by Congress was not the measure of the reasonable value of the use of such cars in the absence of an express agreement to the contrary. *Vail* v. *Jersey Little Falls Mfg. Co.*, 32 Barb. 564; *Sidener* v. *Fetter*, 19 Indiana, 310; *Smithmeyer* v. *United States*, 147 U. S. 343, 359, 360; *The Albert Dumois*, 177 U. S. 255.

*Eastern Railroad Company* v. *United States*, 20 Ct. Cl. 23, 43, distinguished. See *Texas & Pacific Ry. Co.* v. *United States*, 28 Ct. Cl. 379.

On *quantum meruit*, where the contract has been varied or departed from by the parties during performance, such contract is admissible as containing admission of the standard of value, etc. *Reynolds* v. *Jourdan*, 6 California, 109; *Castagnino* v. *Balletta*, 82 California, 250; *Shirk* v. *Brookfield*, 79 N. Y. Supp. 225; *Boyd* v. *Vale*, 82 N. Y. Supp. 932; *Schulze* v. *Farrell*, 126 N. Y. Supp. 678.

*Mr. Joseph Stewart*, with whom *Mr. Assistant Attorney General John Q. Thompson, Mr. S. S. Ashbaugh* and *Mr. P. M. Cox* were on the brief, for the United States:

The issues presented here are wholly issues of law arising upon the facts as found by the court below and admitted, if at all, in the pleadings, and no question can be

raised here, nor was such raised by assignment of error, as to the existence of this alleged fact which the court did not include in its findings and which is not admitted in the pleadings.

All argument submitted by plaintiff in error to show that the maximum rate fixed by the statute for pay for a full line of railway post-office cars is the value of the service rendered by plaintiff in error is irrelevant. The cases cited in support of plaintiff's contention may therefore be dismissed from consideration in this court.

The second main proposition of the plaintiff in error is that the half-line railway post-office cars order complained of was made without authority, was evidently contrary to the law, and was oppressive and unreasonable. *Morrill* v. *Jones*, 106 U. S. 466; *Bruhl* v. *Wilson*, 123 Fed. Rep. 957, and *Hoover* v. *Salling*, 110 Fed. Rep. 43, are all cases where some department of the Government attempted by an order or direction to limit or curtail some right guaranteed by a law of Congress to the whole people, and are not in point.

The case at bar is clearly distinguished from this class of cases. Congress had provided that additional pay may be allowed for every line comprising a daily trip each way of railway post-office cars at a rate not exceeding certain rates named in such statute for cars of certain lengths. This statute does not guarantee to railroad companies an absolute allowance for such cars nor an allowance of the maximum rates fixed by law in case such cars are authorized. As will be shown hereinafter, the law is merely permissive and fixes maximum rates, allowing the Postmaster General full power and discretion to fix minimum rates for such space as he may authorize, in accordance with the actual needs of the service.

In the conduct of the postal service the Post-Office Department is performing a governmental function. It has complete control of the conduct of the postal service

in the exercise of one of the sovereign powers of the people. A railroad company carrying the mails is not a common carrier with reference to such mails, but sustains a specific relation toward the United States. *Bankers' Mut. Cas. Co.* v. *Minneapolis &c., Ry. Co.* 117 Fed. Rep. 434; *Texas & Pacific Ry. Co.* v. *United States*, 28 Ct. Cl. 379; *Minneapolis &c. Co.* v. *United States*, 24 Ct. Cl. 350.

If the company did not choose to accept the terms of the Postmaster General it had the privilege to decline to perform the service, but it could not, by continuing to perform the service, force its own terms upon the United States. Rev. Stat., §§ 3997, 3999, were practically superseded by the act of March 3, 1873 (Rev. Stat., § 4002), and the amending statutes authorizing the readjustment of railroad mail pay on the basis of the average daily weights and upon an entirely new scale of prices.

The making of the order by the Postmaster General was not a violation of the contractual relations. *Minneapolis &c. Ry. Co.* v. *United States*, 24 Ct. Cl. 350.

The Distance Circular and proceedings thereon, including the railway company's reply, show that it was understood, and that it would be subject as in the past to all the postal laws and regulations which were then or might become applicable during the term of the service.

It will be entirely clear from the above that no contract rights of the plaintiff were violated by the order made by the Postmaster General.

The road in question was not a land grant aided railway, and was under no obligation to the Government to carry the mails or furnish the space in cars for railway post-office service, but was free to carry the mails or to decline to carry them or to contract with the Government for the performance of such services or to decline to contract. *Eastern Railroad Co.* v. *United States*, 129 U. S. 391; *Minneapolis, &c. Ry. Co.* v. *United States*, 24 Ct. Cl. 350.

The Postmaster General had power to make the order

complained of authorizing "half car lines" and to subsequently fix the pay for the railway post-office car service at a rate below the maximum provided by law for full lines of railway post-office cars. See statutes and regulations governing allowance of railway post-office car pay. Section 4004, Rev. Stat., as amended by act of March 2, 1907, 24 Stat. 1212; act of March 3, 1879, § 4, 20 Stat. 358; § 1179, par. 3, Postal Laws and Regulations.

The Postmaster General has power to fix minimum rates. Rev. Stat., §§ 4002, 4004; *Eastern Ry. Co.* v. *United States*, 20 Ct. Cl. 23, affirmed, 129 U. S. 391; *Minneapolis & St. Louis Railroad Co.* v. *United States*, 24 Ct. Cl. 350; *Texas & Pacific Ry. Co.* v. *United States*, 28 Ct. Cl. 379.

The orders complained of were an offer which the company could have accepted or rejected. The failure to reject such offer and to refuse to perform the service, and the actual performance of service thereafter, although under objection but with notice that the Department would not pay for any greater space than that authorized, was in effect an acceptance.

The orders were offers of business, which were in effect accepted by furnishing the cars and performing the service. *Chicago & Northwestern Ry. Co.* v. *United States*, 15 Ct. Cl. 232; *Eastern Railroad Co.* v. *United States*, 20 Ct. Cl. 23; *S. C.*, 129 U. S. 391; *Minneapolis & St. Louis Ry. Co.* v. *United States*, 24 Ct. Cl. 350; *Texas & Pacific Ry. Co.* v. *United States*, 28 Ct. Cl. 379.

The Department cannot force a contract upon a railroad company situated as this company was. *Chicago, Milwaukee & St. Paul Railway Co.* v. *United States*, 198 U. S. 389. With more reason it must be said that a railroad company cannot force a contract upon the United States.

MR. JUSTICE LAMAR delivered the opinion of the court.

The Atchison, Topeka & Santa Fé Railroad had a four-year contract with the Post-Office Department to carry

the mail between Chicago and Kansas City. Payment was made on the basis of weight hauled and the speed with which the service was performed. The company also furnished sufficient "railway post office cars," sixty feet in length, to make three round trips each twenty-four hours. This constituted three "car lines," for which the plaintiff received the maximum additional compensation then allowed by Rev. Stat., § 4004, under which the pay varied in proportion to the length of the car.

This contract was to expire June 30, 1907, by limitation; and, with a view of obtaining data, and proposing terms for a new arrangement to begin July 1st, 1907, the postal authorities, in February, mailed to the company a "Distance Circular," which, among other things, stated that the company was "to accept and perform mail service under the conditions prescribed by law and the regulations of the Department." The form was filled out and signed by an agent of the company. He, however, noted exceptions to certain postal orders previously promulgated, and "future regulations which, in the company's opinion, might be unjust or unfairly reduce its compensation for services." The circular, with these objections, was not received by the Department until July 24th, but the company, in the meantime, and without any express contract, continued to carry the mails and to furnish the three car lines. Payment therefor was made at the maximum rate allowed by the act of March 2, 1907 (34 Stat. 1205, 1212, c. 2513), which declared:

"Additional pay allowed for every line comprising a daily trip each way of railway post-office cars shall be at a rate not exceeding twenty-five dollars per mile per annum for cars forty feet in length . . . thirty-two dollars and fifty cents per mile per annum for fifty foot cars and forty dollars per mile per annum for cars fifty-five feet or more in length."

The Reports and Returns, as to the amount of mail car-

ried over plaintiff's road during the spring of 1907, indicated that the quantity of east bound matter was less than that going west from Chicago to Kansas City. Accordingly the Department, on July 18, 1907, "authorized 'three half lines' R. P. O. cars fifty feet in length . . . to supersede three 'half lines' of such cars sixty feet in length over route 135,098, Chicago to Kansas City." As the distance between the two cities was about 450 miles this change would largely reduce the rate of pay, and the company at once objected, claiming in the lengthy correspondence, and subsequent suit which followed, that the statute did not authorize "half car lines"; that the order would require the company to furnish 60-foot cars in one direction and 50-foot cars on the return, thus involving an empty haul one way or forcing the company to furnish 60-foot cars both ways, without corresponding or adequate compensation.

The Department, on the other hand, insisted that under the statute, regulations and long continued practice it had the right to establish "half lines"; that "no contract would be made with any railroad by which it could be excepted from the postal laws and regulations," and that compensation would only be made in accordance with the orders of the Department establishing the three half lines.

The warrant in settlement of the September Quarter was made out on this basis. It was accepted by the company, but under protest. In answer the Department again repeated the statement that any service performed by the company must be with the distinct understanding that payment was to be made in accordance with the orders for space, facilities and car service, required by the postal authorities. The plaintiff continued to protest and to furnish the three full lines. They were daily used by the Department for postal purposes, but payment was made only for half lines.

The plaintiff thereupon brought suit, under the Tucker

Act, claiming that even though there was no express agreement, it was entitled, as under an implied contract, to recover the reasonable value of the three car lines authorized by law, furnished by the company and actually used by the Post-Office Department. This contention should have been sustained but for the fact that neither party was bound to continue the indefinite relation begun July 1, 1907, and under which the rights and liabilities of each arose, from day to day, as the facilities were furnished by the one and used by the other. Whatever may be the rule between private parties where both are demanding performance, and each is insisting on different terms (*Thompson* v. *Sanborn*, 52 Michigan, 141; *Jenkins* v. *National Association*, 111 Georgia, 732, 734), no such question arises in a controversy like this between the railroad on the one hand and the post-office on the other. For, public policy requires that the mail should be carried subject to postal regulations, and that the Department and not the railroad should, in the absence of a contract, determine what service was needed and under what conditions it should be performed. The company in carrying the mails was not hauling freight, nor was it acting as a common carrier, with corresponding rights and liabilities but in this respect it was serving as an agency of government, and as much subject to the laws and regulations as every other branch of the Post-Office.

The statute defined a car line, but did not fix the compensation. It left that to be determined by the Postmaster General, who could have named any rate, not to exceed the statutory maximum. By virtue of that authority he could have made the same price for 60-foot cars as for 50-foot cars, and, as the greater includes the less, he could abolish full lines, or establish "half lines," and adjust the rates accordingly. Such had been the practice before the passage of the act of 1907, and there is nothing in its language indicating any intent

to change the construction previously given, Rev. Stat., § 4004.

The railroad, however, was not bound to furnish "half lines" nor to accept the terms named by the Postmaster General. For Congress had not legislated so as to require compulsory service, at adequate compensation to be judicially determined or in a method provided by statute. And as the plaintiff's road between Chicago and Kansas City had not been aided by a land grant, it was, under existing law, not obliged to carry the mails when tendered, nor to supply R. P. O. cars when demanded. *Eastern Railroad* v. *United States*, 129 U. S. 391, 395–396; *United States* v. *Alabama G. S. Railroad*, 142 U. S. 615. It may have been impracticable to furnish long cars one way and short ones the other. But there was in that fact no hardship imposed by law. The company could have protected itself against onerous terms, or inadequate compensation, by refusing to supply the facilities on the conditions named by the Department. But if, instead of availing itself of that right, it preferred to furnish 60-foot cars after having been informed that the Department only needed and would only pay for those 50 feet in length, the company cannot recover for more than the Department ordered; nor under the statute can it demand compensation for full lines, when the Postmaster General had established "half lines" consisting of cars of one length going and of another returning on the route between Chicago and Kansas City.

There was no error in dismissing the complaint, and the judgment is

*Affirmed.*