The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellants,

v.

Arthur E. SUMMERFIELD, Postmaster General of the United States, Appellee.

Arthur E. SUMMERFIELD, Postmaster General of the United States, Appellant,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellees.

Nos. 12663–12664.

United States Court of Appeals District of Columbia Circuit.

Argued June 28, 1955.

Decided Dec. 12, 1955.

Petition for Rehearing Denied Jan. 27, 1956.

Mr. Francis M. Shea, Washington, D. C., with whom Messrs. J. Carter Fort, Gregory S. Prince, Lawrence J. Latto

and Richard T. Conway, Washington, D. C., were on the brief, for appellants in No. 12663 and appellees in No. 12664. Mr. Alfred L. Scanlan, Washington, D. C., also entered an appearance for appellants in No. 12663 and appellees in No. 12664.

Mr. Edward H. Hickey, Atty., Dept. of Justice, with whom Mr. Paul A. Sweeney, Atty., Dept. of Justice, and Mr. Paul Meininger, Atty., Post Office Department, were on the brief, for appellee in No. 12663 and appellant in No. 12664.

Before EDGERTON, Chief Judge, and PRETTYMAN and BASTIAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an action brought in the District Court by certain railroads for declaratory judgment and injunctive relief against the Postmaster General. It was alleged in the complaint that the Postal Service has conducted an experimental operation in the transportation of first-class (three-cent) mail by air between designated localities since early October, 1953; and that on October 6, 1954, the Postmaster General filed a petition with the Civil Aeronautics Board asking the Board to establish a rate of compensation for such transportation between additional localities, some or all of which are served by one or more of the plaintiff railroads. The railroads asserted that the proposed service is unlawful, void, and beyond the statutory authority of the Postmaster General. The Postmaster General answered. Both sides moved for summary judgment. The District Court granted summary judgment to the plaintiff railroads. It held that the Postmaster General has the right to experiment in the transportation of mail but that prolonged experimental dispatch of three-cent mail by air is not within his statutory authority. At the same time, the court denied the railroads' motion for a permanent injunction, on the ground that irreparable injury had not been shown. The Postmaster General appealed, and the railroads then appealed from those parts of the court's order which sustained the power to experiment provided the operation were not unduly prolonged, and from that part of the order denying the permanent injunction.

The West Coast experiment is the fourth such operation to be instituted. The plan is to tender to air carriers for transportation ordinary first-class mail when, as and if empty space is available on a flight after all other traffic, including mail bearing the special air-mail postage, is accommodated. Ordinary mail thus transported is not to receive expedited handling, transportation or distribution. The object of the experiments, the Postmaster General says, is to gain experience from which it can be determined whether improvements and economies might be achieved by this method.

We are met first with the contention of the Postmaster General that the plaintiff railroads have no standing to sue, that is, that they have no right to initiate judicial inquiry into the legality of his action. He argues the statutes bestow on the railroads only a right to reasonable compensation for services actually performed; they give the railroads no right to perform these services; but the lawsuit seeks to protect a right to perform. Further, the Postmaster General says the plaintiffs have no common-law right to contest his action, since they are merely competitors of the airlines within the rule laid down in such cases as Alabama Power Co. v. Ickes[1] and Kansas City Power & Light Co. v. McKay[2]

The carriage of mail by the railroads is governed by statute.[3] All railroad

---

1. 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938).

2. 96 U.S.App.D.C. 273, 225 F.2d 924 (D. C.Cir.1955), certiorari denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. — (1955).

3. 39 Stat. 425 (1916), 39 U.S.C.A. § 524 et seq.

common carriers are required to carry such mail as may be offered for transportation by the Postmaster General,[4] and they are required to furnish all necessary facilities for carrying and handling the mail while it is in their custody, furnishing cars, station space, and rooms for handling storage and transfer.[5] They must carry the mail on the trains and in the manner the Postmaster General prescribes.[6]

The statute imposes substantial obligations on the plaintiff railroads. Under its terms they have been compelled to make substantial investments in special equipment for handling and carrying the mails. A necessary effect of the Postmaster General's action in tendering three-cent mail for transportation by air is to prevent useful employment of parts of these very considerable investments. Thus, contrary to the contentions of the Postmaster General, more is at stake than a simple statutory privilege of doing business with the Government. The interest of the plaintiff railroads is not a mere expectancy of continued patronage. It is a present interest stemming from substantial investments in cars and equipment. Such an interest may merit legal consideration even when the investment is made freely and with knowledge of a possible change of status that would impair its use.[7] If so, it is sufficient here, for the railroads did not acquire these facilities as merely useful or needed in obtaining Government business; they acquired the equipment because they were commanded to do so by law.

█ Nor can the contested action of the Postmaster General be viewed only as creating competition for the railroads.

In the first place the air carriers and the railroads do not bid for the mail as free competitors. They transport it as agents of the United States,[8] subject to minute regulation by the Postmaster General. Furthermore, the Postmaster General did not simply finance or create new competition; he explicitly discontinued the use of certain railroad equipment. For example, in the record before us is a letter in which the Postal Transportation Service at San Francisco advised the Southern Pacific Company that certain apartments in various trains would be discontinued. This is a direct act which is part and parcel of the experimental program for transportation of three-cent mail by air. If the program is invalid for want of statutory authority the plaintiff railroads have been injured by a direct illegal act. The situations presented in cases like Alabama Power Co. v. Ickes, supra, were wholly different, and such cases do not apply. We think the plaintiff railroads have standing in court to challenge the alleged illegal act.

We come, then, to the question whether the Postmaster General has authority to conduct the experimental carriage of three-cent mail by air. His general authority to arrange for mail transportation stems from a statute which provides: "The Postmaster General shall provide for carrying the mail on all post roads established by law, as often as he, having due regard to productiveness and other circumstances, may think proper." [9] By a later enactment "air routes" were added to the definition of "post roads established by law".[10] More specific are the provisions of the Civil Aero-

---

4. 39 Stat. 429 (1916), 39 U.S.C.A. § 541.

5. 39 Stat. 427 (1916), 39 U.S.C.A. § 538.

6. 39 Stat. 428 (1916), 39 U.S.C.A. § 539.

7. See, e. g., Standard Airlines v. Civil Aeronautics Board, 85 U.S.App.D.C. 29, 177 F.2d 18 (D.C.Cir.1949); Civil Aeronautics Board v. American Air Transport, 91 U.S.App.D.C. 318, 201 F.2d 189 (D.C.Cir.1952) (certified to Supreme Court), certificate dismissed 344 U.S. 4, 73 S.Ct. 2, 97 L.Ed. 4 (1952), appeal decided 91 U.S.App.D.C. 323, 201 F.2d 194 (D.C.Cir.1952).

8. Atchison, T. & S. F. R. Co. v. United States, 225 U.S. 640, 32 S.Ct. 702, 56 L.Ed. 1236 (1912).

9. Rev.Stat. § 3965, 39 U.S.C.A. § 483.

10. 52 Stat. 1027 (1938), 39 U.S.C.A. § 481.

nautics Act.[11] That Act requires the Postmaster General to tender mail to air carriers holding a certificate authorizing the transportation of mail by aircraft according to the needs of the Postal Service, and requires the carriers to transport such mail. It also provides that rates of compensation to air carriers for carrying the mail be fixed by the Civil Aeronautics Board.[12]

The position of the plaintiff railroads is quite simple. They say the foregoing provisions relate to so-called "air mail" and to no other mail. Another statute establishes the rate of postage on "domestic air mail" at six cents an ounce,[13] and "domestic air mail" is defined in the statute as "all mailable matter being transported as mail by air within the continental United States".[14] The railroads therefore argue that "all mailable matter being transported as mail by air" must bear postage at the six-cent rate. These postage-rate provisions, say the railroads, are clear, without ambiguity, and must be given the effect their words require. They are in accord, say the railroads, with the distinction between ordinary surface mail and air mail which has consistently been recognized by legislative and executive authorities prior to the inauguration of the present experimental service.

In support of his authority the Postmaster General urges a number of propositions. He points to his general authority to provide for the carriage of mail on all post roads, including air routes, and to the provisions of the Civil Aeronautics Act to which we have referred. More specifically, he urges contemporaneous legislative approval of the experimental program manifested in committee reports [15] and the 1954 Post Office Appropriation Act.[16] Finally he cites an administrative distinction between air mail, as a special service receiving expedited handling and attention, and ordinary three-cent mail, which receives no special handling whether or not carried by air under this experiment. He claims support in a formal opinion of the Comptroller General [17] supporting the experimental program so long as this distinction is maintained.

The principal problem is whether the statutes fixing an air-mail postage rate and defining "domestic air mail" prohibit carriage by air of mail not bearing the special air-mail rate of postage. The railroads rely heavily upon the statutory definition of "domestic air mail". The complete section containing the definition is as follows:

"As used in this Act, 'domestic air mail' shall embrace all mailable matter being transported as mail by air within the continental United States, within any Territory or possession of the United States, within any geographical area which is a protectorate of the United States, or between any of the aforesaid: *Provided*, That with respect to mail transported under authority of section 1 of the Act of October 14, 1940 (54 Stat. 1175; 39 U.S.C., 1940 edition, 488a), the postage rate of 5 cents for each ounce or fraction of an ounce shall be applicable only to mail of the first class, and for all other classes the rates shall be as prescribed by that Act."

The railroads reason, as we have said, that "all mailable matter being transported as mail by air" is "air mail" and the special postage is required to be paid on all matter thus transported. They

---

11. 52 Stat. 977 (1938), as amended 49 U. S.C.A. § 401 et seq.

12. 52 Stat. 998 (1938), as amended 49 U.S.C.A. § 486.

13. 62 Stat. 1261 (1948), 39 U.S.C.A. § 463a.

14. 60 Stat. 1062 (1946), 39 U.S.C.A. § 462a.

15. E. g., S.Rep. No. 1286, 83d Cong., 2d Sess. (1954).

16. Act May 28, 1954, 68 Stat. 144.

17. Letter of Aug. 12, 1953—B–116331— appearing in this record at page 288 and printed in the joint appendix at page 68.

conclude from those premises that mail not bearing the special postage cannot be transported by air. But we think the argument overlooks an important factor. Congress had, prior to the above-quoted definition, already defined "air mail" as being mail on which special air-mail postage has been prepaid. Under that definition "air mail" is not such matter as the Post Office transports by air but is matter upon which the sender has affixed special postage; the nature of the mail as air mail is fixed by the sender, not by the Postal Service. If that view is correct, the statutory definition of "domestic air mail" above quoted does not preclude the Post Office from transporting by air matter other than "air mail". It must, generally speaking, transport by air matter to which the special postage has been affixed, but it is not required to demand the special postage for all matter which it transports by air.

An interesting problem in statutory construction is posed by the railroads' argument in this respect. The several steps are long and complicated, and we have relegated the recital to an Appendix to this opinion. Our conclusion from the legislative history is that Congress in 1946 meant to use the words "air mail" in the sense it had already given those words and by adding "domestic" it intended merely to add a geographical description extending the continental postage rate to carriage of mail to the territories, possessions and protectorates of the United States. This is the plain, common-sense view. The only contrary consideration is that in 1946 Congress did not in words carry forward the 1925 and 1934 definitions but left them hanging without any practical application. In the absence of clear indication of a Congressional intent to discard the established definition, we think the view urged by the railroads is untenable.

Moreover, to accord "domestic air mail" the meaning urged by the railroads would give rise to serious statutory conflicts. Before 1946, for example, several statutes had been enacted expressly authorizing the Postmaster General to contract, in certain situations, for the carriage of "any or all classes of mail" by aircraft. One statute [18] authorized such contracts in emergencies caused by flood, fire, or calamitous visitation; another [19] granted similar authority to provide for air transportation over otherwise inaccessible or impracticable routes. If the subsequent definition of "domestic air mail" required all mail carried by air to bear air-mail postage, authority to contract for "any or all classes of mail" under these prior statutes was thereby terminated. Under that view of the definition the Postmaster General, whatever the emergency or the terrain, could contract only for mail bearing the special postage, since any mail carried by air under these contracts would be "domestic air mail" and would require the added postage. Congress in 1946 indicated no intention to nullify these prior statutes.

Other considerations support the foregoing view. The obvious purpose of imposing the higher rate of postage for "air mail" was to insure revenue proportionate to higher costs. Real air-mail service, for which the higher rate is charged, involves many priorities, and they are costly. The carriers must transport this mail on an imperative priority basis. Nothing in the record suggests that the mere means of transportation, air as compared to rail, would justify the surcharge. Indeed, so far as the record indicates, the variation in cost between carriage by rail and carriage by air on a non-priority, space-available basis is not substantial. We think the special surcharge for "domestic air mail" implies a special service. The Senate Committee Report of 1946 [20]

18. 52 Stat. 997 (1938), 49 U.S.C.A. § 485(k).

19. 52 Stat. 219 (1938), as amended 39 U.S.C.A. § 470.

20. S.Rep. No. 1834, 79th Cong., 2d Sess.

recited the disparity between the three-cent surface rate and the then eight-cent air rate, called that disparity a "penalty", and indicated the purpose of the five-cent-rate statute as follows:

> "Therefore, R.H. 5560 [which became the postage-rate statute] proposes to remove the penalty and put these two services, surface and air, on approximately equal footing— *the mailer to take his choice in accordance with the importance of his communications* * * *." (Emphasis supplied.)

Under the present experimental program a person mailing an article with three cents postage does not receive any special service "in accordance with the importance of his communications". Indeed, while his mail may be carried by an air carrier, it may receive slower service than if carried by rail, since such mail is handled by the air carriers on a basis of space when, as and if available.

Statutes relating specifically to the authority of the Postmaster General to provide for mail transportation are consistent with our conclusion. As we have noted, the Postmaster General is authorized to arrange for the transportation of mail on all post roads established by law, including air routes. Standing alone this general authorization might not be persuasive,[21] but the Civil Aeronautics Act, in requiring the Postmaster General to tender "mail"[22] to air carriers, does not limit that term to "air mail"; it provides generally that he shall tender "mail" to "the extent required by the Postal Service".

■ Quite important, so far as this specific program is concerned, is the fact that Congress has been fully cognizant of its inauguration and in the appropriation for the Post Office Department in 1954 inserted a proviso requiring reports to include "the total cost of the eliminated and replacement service for airline, truck, and railroad transportation."[23] The plaintiff railroads urge that this is not sufficient to manifest ratification and approval by the Congress and claim the cases cited by the Postmaster General on the point[24] are distinguishable. But we are unable to find any prohibition of the present experimental program, while we do find statutory provisions broad enough to encompass it within their terms. Under these circumstances we think the indications of implied legislative approval are entitled to weight. In sum we conclude that the experimental program for carrying ordinary first-class mail by air is within the statutory authority of the Postmaster General and is authorized by law.

The judgment of the District Court will be vacated and the case remanded with instructions to grant defendant Postmaster General's motion for summary judgment.

Judgment vacated and case remanded.

### Appendix

This Appendix is a study of the definition of "air mail" in connection with the prescription of postage rates.

In 1925 Congress enacted a short statute, 43 Stat. 805, five one-sentence sections, titled "Air Mail Act". That statute defined "air mail" thus: "That when used in this Act the term 'air mail' means first-class mail prepaid at the rates of postage herein prescribed." The rate was prescribed at ten cents an

---

21. Beach v. United States, 226 U.S. 243, 257, 33 S.Ct. 20, 57 L.Ed. 205 (1912).

22. "Mail" is defined in the Act as "United States mail and foreign-transit mail." 52 Stat. 979 (1938), 49 U.S.C.A. § 401 (23). Thus in this statute the term "mail" has no special limitations.

23. 68 Stat. 148.

24. Brooks v. Dewar, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399 (1941); Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947); Wells v. Nickles, 104 U.S. 444, 26 L.Ed. 825 (1881); Swayne & Hoyt v. United States, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659 (1937).

ounce. In the United States Code (1926) the "air mail" definition was codified as Section 462 of Title 39. It remains there today, with a change we shall mention in a moment. The postage rate provision was codified as Section 463 of the same Title.[1]

In 1934 Congress, without expressly repealing either the "air mail" definition or the postage rate section of the 1925 Act, enacted another definition of "air mail" and another postage rate provision. The new definition was substantially the same as the old. It read, Sec. 2(b) (1), 48 Stat. 933:

"(b) When used in this Act—

"(1) The term 'air mail' means mail of any class prepaid at the rate of postage prescribed in subsection (a) of this section."

The latter subsection was the postage rate provision. The codifiers (1940 edition) handled this Congressional action in mixed fashion. They treated the new postage provision as superseding the old provision and thus placed it as Section 463. But they included both definitions of "air mail", leaving the old as Section 462 and adding the new as Section 469. Moreover they made both definitions applicable to the postage rate section, Section 463; translating the statutory language they made each definition read "When used in sections 463 [etc.]".

In the Civil Aeronautics Act, 52 Stat. 1029 (1938), Congress repealed most of the provisions of the 1934 Act relating to air mail but left the rate and definition sections intact. In the Revenue Act of 1943, 58 Stat. 69, 39 U.S.C.A. § 463 note, the postage rate was increased two cents. Thus in 1946 the rate on air mail stood at eight cents. The committees of the Congress were of opinion

that the disparity between this "premium air-mail rate" and the surface rate of three cents was too great. S.Rep. No. 1834, 79th Cong., 2d Sess. (1946). Also, a problem had arisen as to the rate to territories and possessions of the United States. The Senate Committee discussed these problems in its report. In doing so it used the term "air mail" without definition, as though it were a known term, discussed the postage rate problem, and recommended an extension of the continental rate to the territories, etc.; but nowhere did it mention any intent to circumscribe or change the then existing powers of the Postmaster General. Thereupon Congress enacted another short statute, 60 Stat. 1062 (1946), three one-sentence sections, which prescribed the rate on domestic air mail at five cents (changed to six cents by a 1948 Act, 62 Stat. 1261) and defined domestic air mail as we have quoted it in the text of this opinion. But the draftsmen of this 1946 statute did not include a provision fitting the new provisions into existing law or making the new act amendatory of or supplementary to the old; they left the new provisions as a separate and independent piece of legislation.

The codifiers (1946 edition) at first treated the new postage section (fixing the rate on "domestic air mail") as superseding the old, putting it in as Section 463.[2] They left both of the definitions of "air mail" in the Code as they had theretofore been, Sections 462 and 469, and left both referring to the postage section, Section 463. They inserted the new definition of "domestic air mail" as a new section, Section 462a. Thus it is clear that as of that time, so far as the United States Code was concerned, the definition of "air mail" applied to the use of those two words in the

1. In 1928, the rate was changed to 5 cents. 45 Stat. 594. In 1926, 44 Stat. 692, 1928, 45 Stat. 594, and 1930, 46 Stat. 259, the section of the 1925 Act relating to the contracting authority of the Postmaster General was amended and other sections added. In 1934, 48 Stat.

933, that section of the 1925 Act and the added sections were repealed. Those changes are immaterial here.

2. In their explanatory comments the codifiers said the new provision "amended" the old.

phrase "domestic air mail". As we have already said, we think that was correct.

In 1948 Congress changed the law respecting post cards sent by air, setting that rate at four cents. 62 Stat. 1261. On all other matter Congress prescribed a six-cent rate. When the codifiers put this statute in the Code, Supp. II to 1946 Code, they did not treat it as superseding the old postage rate section, Section 463; they added it as a new section, Section 463a, and dropped Section 463 out of the Code. But they did not make a corresponding change in the definitions of "air mail". So Section 462 is made to apply to Sections 461 (the Short Title section), 462 (the definition itself), and 465 (having to do with rules and regulations). And the other definition, Section 469, is made to apply to Section 463 (which is not in the Code at all) and Section 469f (which relates to claims on account of annulled contracts). So the Code makes it appear that neither definition of "air mail" applies to the postage rate provision. Moreover the codifiers made the "air mail" definition in Section 462 read as meaning mail prepaid at the rates "prescribed in sections 461, 462 and 465 of this title." No postage rates are prescribed in any of those sections. And they made the definition in Section 469 read as meaning mail prepaid at the rate "prescribed in section 463 of this title." As we have pointed out, there was no Section 463 left in the Title. We find nothing in any statute or in any legislative history which justifies this change, if it is intended to be a change, in the statutes made in the course of codification.

The essence of the contention of the railroads on this point is that when Congress defined "domestic air mail" in 1946 it did not mean to use the term "air mail" as the term was already defined by statute but meant to redefine that term as well as to add the word "domestic". Nothing in the legislative history, so far as we can find, justifies that view. Our view on the point is as we have stated it in the text of this opinion.

BASTIAN, Circuit Judge (concurring in the result).

I agree with the holding of the court that the Postmaster General has the authority to conduct experimental carriage of three-cent mail by air. I have doubts, however, as to the standing of the railroads to sue.